**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-4055

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JUAN CORTEZ, a/k/a Jasinto Morales,

Defendant - Appellant.

------------------------------

STEVEN ABRAMS; ESMERALDA CABRERA; TEOFILO CHAPA; JEFFREY
S. CHASE; GEORGE T. CHEW; MATTHEW J. D'ANGELO; BRUCE J.
EINHORN; CECELIA M. ESPENOZA; NOEL FERRIS; JOHN F. GOSSART,
JR.; MIRIAM HAYWARD; REBECCA JAMIL; WILLIAM P. JOYCE; CAROL
KING; ELIZABETH A. LAMB; MARGARET MCMANUS; CHARLES ERNST
PAZAR; LAURA RAMIREZ; JOHN W. RICHARDSON; LORY DIANA
ROSENBERG; SUSAN ROY; PAUL WILLIAM SCHMIDT; DENISE
NOONAN SLAVIN; ANDREA H. SLOAN; WILLIAM PETER VAN WYKE;
GUSTAVO D. VILLAGELIU; POLLY A. WEBBER,

Amici Supporting Appellant.

Appeal from the United States District Court for the Western District of Virginia, at
Lynchburg.  Norman K. Moon, Senior District Judge.  (6:18-cr-00022-NKM-1)

Argued:  May 9, 2019                                    Decided:  July 17, 2019

Before MOTZ, AGEE, and HARRIS, Circuit Judges.

Affirmed by published opinion. Judge Harris wrote the opinion, in which Judge Motz and Judge Agee joined.

**ARGUED:** Erin Margaret Trodden, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Harrisonburg, Virginia, for Appellant. Laura Day Rottenborn, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee. **ON BRIEF:** Juval O. Scott, Federal Public Defender, Roanoke, Virginia, Lisa M. Lorish, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charlottesville, Virginia, for Appellant. Thomas T. Cullen, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.

PAMELA HARRIS, Circuit Judge:

Juan Cortez, a citizen of Mexico, was charged with illegally reentering the United States after having been removed years prior. Cortez conceded that he was unlawfully present, but argued that his initial removal order was invalid because of an alleged filing defect that deprived the immigration court of "jurisdiction" over his case. The district court rejected that argument, and Cortez subsequently pleaded guilty while preserving his right to raise the issue on appeal.

We affirm the district court's order. We first hold that the premise of Cortez's argument – that the purported filing defect in his case deprived the immigration court of authority to enter a removal order, so that he may collaterally challenge that order in subsequent criminal proceedings – is incorrect. And in any event, there in fact was no defect. As the district court explained, the applicable regulations do not require that the information identified by Cortez – a date and time for a subsequent removal hearing – be included in the "notice to appear" that is filed with an immigration court to initiate proceedings.

## I.

### A.

Juan Cortez is a citizen of Mexico who has been found to be unlawfully present in the United States on two occasions. The first was in 2011. On February 27 of that year, the Department of Homeland Security ("Department") served Cortez with a document

3

labeled "Notice to Appear." That notice advised him, among other things, that he was charged with being unlawfully present in the country, and that the Department was initiating removal proceedings against him. The notice provided Cortez with the location of the immigration court where his removal hearing would be held, but did not provide a date and time, stating only that the hearing would occur "on a date to be set at a time to be set." J.A. 10. At the same time it served Cortez with this written notice, however, the Department orally informed him of his hearing date and time.

The Department filed the notice to appear with the immigration court on March 3, 2011. Two weeks later, on March 17, 2011, the immigration court held a removal hearing, which Cortez attended via video conference. The immigration judge confirmed that Cortez was unlawfully present and ordered that he be removed from the country. There is no indication that Cortez challenged the contents of the notice to appear or the immigration judge's authority to order his removal, and Cortez neither administratively nor judicially appealed the removal order on any ground. Cortez was removed from the United States in April 2011.

**B.**

At some point following his removal, Cortez entered the United States a second time, again without applying for legal admission. In September 2018, the government located Cortez in the vicinity of Lynchburg, Virginia. This time, the government criminally charged Cortez with illegal reentry under 8 U.S.C. § 1326(a), which is violated when an individual who previously was "deported" or "removed" from the country

4

"enters, attempts to enter, or is at any time found in, the United States" without legal authorization.

Before the district court, Cortez moved to dismiss the indictment against him. He conceded that he had entered the United States without legal authority, so that the second element of his criminal charge – unlawful presence – was satisfied. But the first element – a previous removal from the country – was not satisfied, Cortez argued, because even though he attended his 2011 immigration hearing, "the immigration judge lacked subject matter jurisdiction to enter an order of removal against him." J.A. 6. It followed, Cortez contended, that his 2011 removal order was void, and could not be the basis for a charge under § 1326(a).

As a general rule, Cortez recognized, a criminal defendant may collaterally attack a removal order in a prosecution for illegal reentry only if three conditions are met: "(1) [he] exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). But according to Cortez, that framework did not apply because he was challenging the "subject matter jurisdiction" of the immigration court, "an issue that cannot be waived or forfeited." And even if it did apply, Cortez argued, a lack of "subject matter jurisdiction" by itself satisfied all three prerequisites for a collateral attack under § 1326(d).

The purported error at the heart of Cortez's claim was the failure of the notice to appear filed in connection with his 2011 removal proceeding to specify a date and time

5

for his hearing. Under the regulations governing removal proceedings, Cortez explained, proceedings commence and "[j]urisdiction vests" with the immigration judge when a "charging document" is filed with the immigration court. 8 C.F.R. § 1003.14(a). The regulations list three documents that may qualify as "charging document[s]," including a "[n]otice to [a]ppear." *Id.* § 1003.13. And a "notice to appear," Cortez finished, is defined in the Immigration and Nationality Act ("INA") itself, which requires that a "notice to appear" include the "time and place at which the proceedings will be held," 8 U.S.C. § 1229(a)(1)(G)(i); *see also Pereira v. Sessions*, 138 S. Ct. 2105, 2114 (2018) (confirming that notice to appear under § 1229(a) "include[s] . . . the time and place of the removal proceedings"). Putting all of that together, Cortez argued that because the notice filed in his case omitted a hearing time, it did not vest the immigration court with "jurisdiction," rendering his removal order a legal nullity.

The district court disagreed. The court did not dispute the premise of Cortez's argument: that a defect in the notice to appear would implicate the immigration court's jurisdiction and allow for a collateral attack on the removal order. But, the court held, the notice to appear was not defective, because the regulatory definition of the "notice to appear" that vests a court with "jurisdiction" under 8 C.F.R. § 1003.14(a) does *not* "list the time and date of the removal proceedings as required criteria." J.A. 18 (citing 8 C.F.R. § 1003.15(b)–(c)). Cortez, the court reasoned, was pointing to the wrong definition of "notice to appear": The statutory provision in § 1229(a) does not address "the immigration court's . . . jurisdiction over the proceeding," but is instead concerned with the separate issue of providing notice to a noncitizen in a removal proceeding. *Id.*

6

Because Cortez had shown no defect affecting the immigration court's "jurisdiction," the court concluded, he could attack his removal order collaterally only if he could satisfy the standard § 1326(d) requirements. Jumping directly to the third requirement, the court held that Cortez's removal order was not "fundamentally unfair," J.A. 20, in part because Cortez – who attended his hearing after being provided with oral notice of the date and time – suffered no "actual prejudice," J.A. 21. Accordingly, the district court denied Cortez's motion to dismiss the indictment against him.

Cortez pleaded guilty less than two weeks later, and the district court sentenced him to time served. Cortez's plea agreement reserved his right to appeal the district court's ruling on his motion to dismiss the indictment, and he timely noticed this appeal.

## II.

Cortez makes the same argument on appeal as he did before the district court: Because no proper notice to appear was filed in his removal proceedings, the immigration court lacked "jurisdiction," and as a result, there is no valid removal order on which to base a prosecution for illegal reentry. We review this claim, which turns on purely legal questions, de novo, *United States v. Hatcher*, 560 F.3d 222, 224 (4th Cir. 2009), and find that the district court correctly denied Cortez's motion to dismiss.

Before we even reach Cortez's argument – that the immigration court lacked "subject matter jurisdiction" to enter his 2011 removal order because of a defect in the notice to appear filed with the court – we are confronted with a threshold issue. Both parties assume that a successful challenge to the "subject matter jurisdiction" of an

7

immigration court would by itself be grounds for a collateral attack on a removal order, relieving Cortez of the obligation to satisfy the § 1326(d) requirements that ordinarily apply to collateral challenges. We have questions about that assumption, which we outline below.

We need not resolve the issue, however, because for two independent reasons, Cortez cannot succeed in his challenge to the immigration court's "jurisdiction." First, the regulation on which Cortez relies, 8 C.F.R. § 1003.14(a), is a docketing rule that does not implicate the immigration court's adjudicatory authority, referred to as "subject matter jurisdiction" by the parties. And in any event, we agree with the district court that Cortez has failed to show any defect in his notice to appear under that regulation.

**A.**

At bottom, this case is about a collateral challenge to a removal order in a criminal proceeding for illegal reentry under 8 U.S.C. § 1326(a). The threshold question presented is whether Cortez may advance his argument – that the immigration court lacked "jurisdiction" to issue a removal order in his case – in this posture. The parties and the district court assumed that Cortez's challenge to the "subject matter jurisdiction" of the immigration court, if successful, necessarily would allow for a collateral attack on his removal order, relieving him of the obligation to satisfy the § 1326(d) requirements that ordinarily apply. But we have doubts about that assumption. And given the breadth of its implications – opening to collateral attack every removal order in proceedings commenced by an incomplete notice, regardless of the significance of the error or the possibility of prejudice – we do not wish to leave it unaddressed.

8

In a criminal proceeding for illegal reentry, the existence of a removal order usually is enough to meet the government's burden of establishing the defendant's prior removal or deportation. *United States v. Moreno-Tapia*, 848 F.3d 162, 165 (4th Cir. 2017). But there is an exception, allowing a defendant to collaterally attack a removal order – so that it no longer serves as a predicate for a criminal reentry charge – when there was a "procedural flaw in the immigration proceeding" that prevented the noncitizen from seeking review when the order was issued, thus violating his due process rights. *Id.* at 169; *see also United States v. Mendoza-Lopez*, 481 U.S. 828 (1987). Under 8 U.S.C. § 1326(d), a noncitizen must make each of three showings to come within that exception and mount a collateral attack: that (1) he "exhausted any administrative remedies" available to seek relief against the removal order; (2) the removal proceedings "improperly deprived [him] of the opportunity for judicial review"; and (3) entry of the order was "fundamentally unfair."

It is readily apparent that Cortez cannot make any of those showings. First, Cortez failed to exhaust his administrative remedies: He neither administratively appealed the immigration judge's decision nor provided any explanation for why he could not do so. Second, Cortez failed to show that the alleged defect in his proceeding – the absence of a hearing date on the notice filed with the immigration court – somehow deprived him of the opportunity for judicial review of a removal proceeding of which he had actual notice and in which he actively participated. Finally, Cortez cannot establish "fundamental unfairness," which requires that "but for the errors complained of, there was a reasonable probability that he would not have been deported," *United States v. El Shami*, 434 F.3d

659, 665 (4th Cir. 2005). Cortez was promptly provided with oral notice of the date and time of his hearing, which, again, he attended, and there is no reason to believe that the hearing would have proceeded any differently, much less resulted in a different outcome, had the notice docketed with the immigration court also provided the same date and time information.

Thus, Cortez may proceed with his collateral attack only if there is some exception-to-the-exception that would allow him to bypass these normal requirements. Cortez argues that there is just such an exception: If he is correct that a defect in the notice to appear filed with the immigration court to commence his proceedings deprived the immigration court of "jurisdiction" under 8 C.F.R. § 1003.14(a), then his removal order was void *ab initio* and necessarily subject to collateral challenge. But Cortez provides scant authority for that theory, and we question whether he has framed the issue correctly.

First, contrary to what seems to be Cortez's assumption, there is no freestanding rule allowing for collateral attacks based on a lack of subject matter jurisdiction. Instead, the opposite is true: "Even subject-matter jurisdiction . . . may not be attacked collaterally." *Kontrick v. Ryan*, 540 U.S. 443, 455 n.9 (2004) (explaining that a lack of subject matter jurisdiction may be raised at any stage within the same civil proceeding, but generally is not grounds for collateral challenge). As we have explained, the interest in the finality of judgments is sufficiently strong that only in exceptional circumstances will a collateral challenge based on the lack of subject matter jurisdiction be permitted. *Cooper v. Productive Transp. Servs., Inc. (In re Bulldog Trucking, Inc.)*, 147 F.3d 347,

10

352–53 (4th Cir. 1998). "Mere error in the exercise of jurisdiction" is not enough. *Id.* at 352. Cortez does not allege exceptional circumstances under this standard, so any entitlement he has to raise a "jurisdictional" objection to his removal order in this collateral criminal proceeding must come, if at all, by way of § 1326(d).

Second, there is good reason to question Cortez's supposition that a claim characterized as "jurisdictional" should be exempt from § 1326(d)'s limits, including the statutory exhaustion requirement. Cortez proceeds by analogy to federal court subject matter jurisdiction under Article III of the Constitution: Challenges to that jurisdiction cannot be waived or forfeited, *see Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004) (en banc), and so, Cortez contends, he did not forfeit his challenge to the immigration court's authority over his removal proceeding by attending his hearing without objecting, nor by failing to raise the issue on administrative or judicial review as required under § 1326(d)(1)–(2). But an immigration court is not an Article III court, and a removal proceeding is an agency process, not an Article III adjudication. And as the Supreme Court has instructed, we should not "reflexive[ly] exten[d] to agencies . . . the very real division between the jurisdictional and nonjurisdictional that is applicable to courts." *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013). Rather, because the power of administrative agencies (unlike courts) is prescribed entirely by statute, *any* "improper[]" agency action is "ultra vires," and there is "no principled basis for carving out some arbitrary subset" of agency errors as "jurisdictional." *Id.* at 297–98. Cortez's claim that the immigration court lacked the authority to hear his case, in other words, is not meaningfully distinct from a more

11

routine claim that an immigration court has misconstrued the INA: "[T]he question – whether framed as an incorrect application of agency authority or an assertion of authority not conferred – is always whether the agency has gone beyond what Congress has permitted it to do." *Id.*

*City of Arlington* involved the degree of deference owed to an agency interpretation of a statute bearing on its own "jurisdiction," or statutory authority. *Id.* at 296–97. Several courts, however, have applied *City of Arlington* to agency adjudications – precisely the context we face here – and concluded that purported "jurisdictional" claims are subject to the same statutory limits, including exhaustion requirements and forfeiture rules, as other claims that an agency has acted improperly. *See PGS Geophysical AS v. Iancu*, 891 F.3d 1354, 1362 (Fed. Cir. 2018); *1621 Route 22 W. Operating Co., LLC v. NLRB*, 825 F.3d 128, 140–41 (3d Cir. 2016). Indeed, the Ninth Circuit held as much in the immigration context years before *City of Arlington*, finding that a claim that the immigration court "lacked jurisdiction" over a certain group of noncitizens "turn[s] on a question of statutory interpretation," so that normal rules of exhaustion and forfeiture apply. *Xiao v. Barr*, 979 F.2d 151, 153, 155 (1992). In short, we have significant doubts about Cortez's assumption that the "jurisdictional" nature of his challenge to his administrative removal order puts him in a different and special category when it comes to judicial review, exempting him from § 1326(d)'s exhaustion requirements and other limits on collateral attacks.

The government, however, has not raised this objection. Instead, it accepts Cortez's premise that a proceeding conducted outside the scope of an immigration court's

adjudicatory authority must be deemed void on collateral review. Moreover, other courts addressing similar challenges to the "jurisdiction" of immigration courts have made the same assumption. *See, e.g.*, *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 310 (6th Cir. 2018) (finding that propriety of notice to appear commencing removal proceedings "can never be forfeited or waived" (internal quotation marks omitted)). For purposes of this appeal, we need not decide conclusively whether that assumption is well-founded. As we now explain, Cortez in any event cannot establish that his 2011 removal proceeding was conducted without adjudicatory authority, and that is enough to resolve this case.

**B.**

Even accepting Cortez's threshold presumption – that a "jurisdictional" defect in the notice to appear that commenced his removal proceedings would entitle him to collaterally challenge his removal order – we find his argument lacking in two independent respects. First, the purported defect Cortez has identified – the failure of the notice to appear filed with the immigration court to include a date and time for his removal hearing – does not implicate the immigration court's adjudicatory authority or "jurisdiction." And second, there is in any event no defect, because the regulations that govern the filing of a notice to appear do not require inclusion of a hearing date and time.

1.

We start with Cortez's contention that any defect in the notice that commenced his removal proceedings would deprive the immigration court of "subject matter jurisdiction" to issue a removal order. At the outset, we clarify some terminology: When it comes to administrative agencies, the question of subject matter jurisdiction "is more appropriately

13

framed" as "whether the agency actor, such as the [immigration judge] here, lacked statutory authority to act" or acted outside its "authority to adjudicate." *United States v. Arroyo*, 356 F. Supp. 3d 619, 624 (W.D. Tex. 2018) (citing *City of Arlington*, 569 U.S. at 297–98). But however the question is framed, the answer is the same: The regulation on which Cortez relies, 8 C.F.R. § 1003.14(a), is an internal docketing rule, not a limit on an immigration court's "jurisdiction" or authority to act.

Exercising congressionally delegated authority, *see* 8 U.S.C. § 1103(g)(2), the Attorney General has promulgated regulations governing the initiation of removal proceedings. The regulation central to this case, 8 C.F.R. § 1003.14(a), provides that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court." "Charging document," in turn, is defined as "the written instrument which initiates a proceeding before an Immigration Judge," and one such document is a "[n]otice to [a]ppear." *Id.* § 1003.13. Finally, a nearby regulation, 8 C.F.R. § 1003.18(b), specifies the contents of a notice to appear, and – unlike its statutory counterpart in 8 U.S.C. § 1229(a)(1) – does not require a date and time for a subsequent removal hearing. Instead, that information must be included in a notice to appear only "where practicable"; if not, the immigration court becomes responsible for scheduling a hearing and providing the noncitizen with notice of the "time, place, and date." 8 C.F.R. § 1003.18(b).

The central question at this stage of our analysis is whether the term "jurisdiction" in § 1003.14(a) signals a limit on the scope of an immigration court's adjudicatory authority, so that a hypothetical defect in a notice to appear filed with the immigration

14

court would deprive the court of authority to hear and decide the case. Both parties assume this to be true. And a substantial majority of courts addressing this issue have done likewise, treating § 1003.14(a) as though it implicates an immigration court's adjudicatory authority or "subject matter jurisdiction." *See, e.g.*, *Ali v. Barr*, 924 F.3d 983, 985–86 (8th Cir. 2019); *Banegas Gomez v. Barr*, 922 F.3d 101, 111–12 (2d Cir. 2019); *Karingithi v. Whitaker*, 913 F.3d 1158, 1159–62 (9th Cir. 2019); *Hernandez-Perez*, 911 F.3d at 310. But some courts – including, most recently, the Seventh Circuit – have questioned this premise, and held instead that § 1003.14(a) is a procedural claim-processing rule without jurisdictional implications. *See Ortiz-Santiago v. Barr*, 924 F.3d 956, 962–64 (7th Cir. 2019); *see also United States v. Diaz-Martinez*, __ F. Supp. 3d __, 2019 WL 1940600, at *16 (E.D. Va. May 1, 2019); *United States v. Monje-Garcia*, No. 18-cr-378-1, 2019 U.S. Dist. LEXIS 47323, at *7–9 (N.D. Ill. Jan. 15, 2019); *United States v. Rivera Lopez*, 355 F. Supp. 3d 428, 438–39 (E.D. Va. 2018); *Arroyo*, 356 F. Supp. 3d at 624–30. We agree with those courts, and conclude that § 1003.14(a) is not a jurisdictional rule.

It is true, as Cortez emphasizes, that § 1003.14(a) refers to the vesting of "jurisdiction," a word that "[p]roperly used . . . refers to the 'classes of cases . . . falling within a court's adjudicatory authority.'" *Hyman v. City of Gastonia*, 466 F.3d 284, 289 (4th Cir. 2006) (third alteration in original) (quoting *Kontrick*, 540 U.S. at 455). But the term "jurisdiction" also is used "colloquially," *United States v. George*, 676 F.3d 249, 259 (1st Cir. 2012), and "less than meticulous[ly]," to refer to "claim-processing rules that do not delineate what cases . . . courts are competent to adjudicate," *Kontrick*, 540

U.S. at 454 (holding that time limit for objection in bankruptcy proceedings is not jurisdictional but instead a claim-processing rule). So we cannot simply assume, with the parties, that because § 1003.14(a) refers to "jurisdiction," it limits an immigration court's adjudicatory authority. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998) ("Jurisdiction . . . is a word of many, too many, meanings." (internal quotation marks omitted)). Indeed, the Supreme Court in recent years has cautioned against precisely that mistake, insisting on a sharper distinction between rules that are jurisdictional in the formal sense and even the most "emphatic" of non-jurisdictional claim-processing rules. *Union Pac. R.R. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment*, 558 U.S. 67, 81 (2009) (internal quotation marks omitted).

In drawing that distinction here, we find the Supreme Court's decision in *Union Pacific* particularly instructive. At issue in that case was the jurisdictional status of an agency rule requiring that parties before an administrative tribunal – there, the National Railroad Adjustment Board – submit proof of settlement efforts in mediation, or "conference," when initiating grievance proceedings. *Id.* at 76–80. That requirement, the Court concluded, was not jurisdictional, in that "its satisfaction does not condition the adjudicatory authority of the Board." *Id.* at 82. In reaching that determination, the Court emphasized two factors. First, the Board was granted by statute – not regulation – its jurisdiction over "all" employment disputes between carriers and their employees, and that broad grant of adjudicatory authority was not made contingent on proof of mediation efforts. *Id.* at 82–83 (internal quotation marks omitted). Nor, the Court noted, had Congress given the Board authority to adopt its own rules of "jurisdictional dimension."

16

*Id.* at 83–84.  And second, the function of the mediation rule was to provide "instructions on party submissions," and such "pleading instructions," the Court concluded, are "claim-processing, not jurisdictional, rules." *Id.* at 85.

The same factors govern here, and lead to the same result.  As in *Union Pacific*, the immigration courts' adjudicatory authority over removal proceedings comes not from the agency regulation codified at 8 C.F.R. § 1003.14(a), but from Congress:  It is the INA that "explicitly and directly grants that authority," *Arroyo*, 356 F. Supp. 3d at 624 (emphasis omitted), providing that "[a]n immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien," 8 U.S.C. § 1229a(a)(1).  "That statutory grant of authority is the immigration judges' 'subject matter jurisdiction,' and it preexisted" – by decades – § 1003.14(a)'s reference to the vesting of "jurisdiction" in immigration court.  *Arroyo*, 356 F. Supp. 3d at 624.  And nothing about that broad and mandatory grant of adjudicatory authority, *see Holland v. Pardee Coal Co.*, 269 F.3d 424, 431 (4th Cir. 2001) (noting "general rule that 'shall' is mandatory"), is made contingent on compliance with rules governing notices to appear, whether statutory, *see* 8 U.S.C. § 1229(a) (statutory definition of notice to appear), or regulatory, *see* 8 C.F.R. § 1003.18(b).  *See Union Pac. R.R.*, 558 U.S. at 83 (mediation requirement is not "moored to" statutory grant of adjudicatory authority).

Nor – again paralleling *Union Pacific* – is there any indication that the regulation at 8 C.F.R. § 1003.14(a) was intended to implement some statutory provision giving the Attorney General the authority to "adopt rules of jurisdictional dimension." *Id.* at 83–84; *see also Arroyo*, 356 F. Supp. 3d at 629.  To deem such a regulation "jurisdictional"

would be "to say that the Attorney General is 'in effect, . . . *telling himself* what he may or may not do.'" *Arroyo*, 356 F. Supp. 3d at 629 (quoting *Garcia v. Lynch*, 786 F.3d 789, 797 n.2 (9th Cir. 2015) (Berzon, J., concurring)). That is not the way we generally think of jurisdictional rules, which typically operate as "*external* constraints," not "internal rules" that can be changed at will by an agency head. *Garcia*, 786 F.3d at 797 n.2 (Berzon, J., concurring). Indeed, it is in part for that reason that several courts have concluded that § 1003.14(a) cannot "properly be conceived of as jurisdictional." *Arroyo*, 356 F. Supp. 3d at 629 (quoting *Garcia*, 786 F.3d at 797 n.2 (Berzon, J., concurring)); *see also Ortiz-Santiago*, 924 F.3d at 963 ("While an agency may adopt rules and processes to maintain order, it cannot define the scope of its power to hear cases."); *Rivera Lopez*, 355 F. Supp. 3d at 439 (an agency's "subject-matter jurisdiction" stems from "congressional grants of authority," not "a regulation promulgated by the agency itself").

There is also the question of the regulation's function. *See Union Pac. R.R.*, 588 U.S. at 85 (describing regulation there as functioning "essentially [as] pleading instructions"). As the Supreme Court has explained, "[a]mong the types of rules that should not be described as jurisdictional are . . . claim-processing rules," which "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011) (internal quotation marks omitted). On its face, that is precisely what § 1003.14(a) does, laying out the procedural steps that must be taken to docket a case before an immigration judge: A "charging document" must be filed with the immigration court by the government – at the time § 1003.14(a) was promulgated, by

18

the Immigration and Naturalization Service ("INS"), then an agency within the Department of Justice – and that document must be accompanied by a certificate showing service on the opposing party. 8 C.F.R. § 1003.14(a).[1] The text alone, in other words, with its "emphasis on the initiation of proceedings and on service to the opposing party[,] suggests [§ 1003.14(a)] is focused not on the immigration court's fundamental power to act but rather on 'requiring that the parties take certain procedural steps at certain specified times,'" making it a claim-processing rule rather than a "genuine jurisdictional requirement." *Rivera Lopez*, 355 F. Supp. 3d at 439 (footnote omitted) (quoting *Henderson*, 562 U.S. at 435–36).

The regulation's history confirms that reading. Before § 1003.14(a)'s predecessor regulation was adopted in 1987, the INS had the authority both to initiate deportation proceedings and to "terminate [those] proceedings at any time prior to the actual commencement of the hearing." Aliens and Nationality; Rules of Procedure for Proceedings Before Immigration Judges, 50 Fed. Reg. 51,693, 51,693 (Dec. 19, 1985); *see also Arroyo*, 356 F. Supp. 3d at 626–27. The original version of § 1003.14(a) – promulgated as part of a "set of uniform procedural rules" for immigration courts – was intended to give immigration courts control over their own calendars, allowing for

---

[1] In full, § 1003.14(a) reads as follows: "Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the [INS]. The charging document must include a certificate showing service on the opposing party pursuant to § 1003.32 which indicates the Immigration Court in which the charging document is filed. However, no charging document is required to be filed with the Immigration Court to commence bond proceedings pursuant to [other sections] of this chapter."

19

"optimal scheduling" to expedite hearings, by providing for the certainty of a filed document – the "charging document" – and limiting the authority of the INS to "cancel" a proceeding once a charging document had been filed. 50 Fed. Reg. at 51,693; *see also Arroyo*, 356 F. Supp. 3d at 626–27 (describing regulatory history); *In re G-N-C-*, 22 I. & N. Dec. 281, 284 (B.I.A. 1998) (§ 1003.14(a) "marks a clear boundary between the time prior to commencement of proceedings, where [an INS] officer has decisive power to cancel proceedings, and the time following commencement, where the [INS] officer merely has the privilege to move for dismissal of proceedings"). The filing of a charging document such as a "notice to appear," in other words, "marks an agency internal boundary," *Arroyo*, 356 F. Supp. 3d at 628, that gives the immigration courts, rather than the INS or the Department, "control over the docketing of cases," *id.* at 627 (internal quotation marks omitted).

We think that regulatory history makes clear, were there any doubt, that § 1003.14(a) is "not a grant of authority" with jurisdictional implications, but something more like a docketing rule, providing for "the orderly administration of proceedings, including deportation proceedings, before the immigration judges." *Id.* at 628; *see also Rivera Lopez*, 355 F. Supp. 3d at 439 (analogizing regulation to "a federal court's local rules . . . which in no way affect the federal court's subject-matter jurisdiction"). As the Seventh Circuit concluded, "[w]hat the [agency] was doing was establishing exactly what

20

it takes properly to commence a case before [an immigration court]. That decision is not one of jurisdictional significance." *Ortiz-Santiago*, 924 F.3d at 963.[2]

2.

Our conclusion that § 1003.14(a) is not a jurisdictional rule by itself forecloses Cortez's attack on his 2011 removal order: Even if there were a defect in the notice to appear that was filed with the immigration court, that court did not lack adjudicatory authority to issue its order. But Cortez also cannot succeed in his attack for a second and independent reason: The notice to appear in question was not in fact defective.

As previewed above, the question here boils down to whether a notice to appear filed with an immigration court to commence proceedings under 8 C.F.R. § 1003.14(a) must include the date and time of the noncitizen's forthcoming removal hearing – which Cortez's did not. Under the regulation, proceedings are initiated with a "charging document," 8 C.F.R. § 1003.14(a), which in turn is defined as one of three documents, including a "[n]otice to [a]ppear," *id.* § 1003.13. According to Cortez, the required contents of that "notice to appear" are controlled by 8 U.S.C. § 1229(a), a statutory provision entitled "Notice to appear" that describes the "written notice [that] . . . shall be given in person" to the noncitizen, and requires such notice to specify the "time and place

---

[2] Cortez points to our court's unpublished decision in *Shogunle v. Holder*, 336 F. App'x 322 (4th Cir. 2009) (per curiam), to support his position that "jurisdiction" does not vest in the immigration court until the proper notice is filed. But *Shogunle* simply applied 8 C.F.R. § 1003.14(a) without deciding whether that rule uses the word "jurisdiction" in the proper or colloquial sense. And in any event, "unpublished opinions are not binding in this [c]ircuit." *United States v. King*, 673 F.3d 274, 280 n.5 (4th Cir. 2012).

at which the proceedings will be held," *id.* § 1229(a)(1)(G)(i). And in its recent decision in *Pereira v. Sessions*, Cortez emphasizes, the Supreme Court held that a "notice to appear" that did *not* include a hearing time could not qualify as a "notice to appear under section 1229(a)." 138 S. Ct. at 2114 (quoting 8 U.S.C. § 1229b(d)(1)(A)).

The government disagrees, and maintains that § 1003.14(a) is satisfied by a notice to appear that complies with the separate regulatory definition set out in 8 C.F.R. § 1003.15(b)–(c). That definition specifies what information must be "provide[d] . . . to the Immigration Court," *id.* § 1003.15(c), and unlike § 1229(a), as noted above, it does not include on its detailed list of items the date and time of a subsequent removal hearing. Instead, date and time information must be included in a notice to appear filed under § 1003.14(a) only "where practicable," *id.* § 1003.18(b); in other cases, the immigration court itself is responsible for ensuring notice to a noncitizen of a hearing's "time, place, and date," *id.* And *Pereira*, the government finishes, has no bearing on this matter, because it considered only the meaning of a "notice to appear under section 1229(a)," 138 S. Ct. at 2114 (quoting 8 U.S.C. § 1229b(d)(1)(A)), and did not address the commencement of removal proceedings as governed by federal regulations.

Many courts have considered this question since *Periera* was decided in 2018, and they overwhelmingly have adopted the government's position. Our sister circuits, with one exception, have agreed that the required contents of the notice to appear that commences removal proceedings under 8 C.F.R. § 1003.14(a) are those set out by regulation, not the INA. *See Ali*, 924 F.3d at 986; *Banegas Gomez*, 922 F.3d at 110–12; *Santos-Santos v. Barr*, 917 F.3d 486, 489–91 (6th Cir. 2019); *Karingithi*, 913 F.3d at

22

1159–62; *Hernandez-Perez*, 911 F.3d at 310–15. *But see Ortiz-Santiago*, 924 F.3d at 959–63 (indicating that notice to appear without date and time violated § 1003.14(a), but finding issue forfeited because § 1003.14(a) is nonjurisdictional).[3] And while a "handful" of district courts have ruled for the noncitizen on this issue, "far more district courts" have sided with the government. *United States v. Gomez-Salinas*, No. 2:19cr10, 2019 WL 1141063, at *5 (E.D. Va. Mar. 12, 2019).

We agree with the substantial majority of courts to address this issue, as well as the district court here: It is the regulatory definition of "notice to appear," and not § 1229(a)'s definition, that controls in determining when a case is properly docketed with the immigration court under 8 C.F.R. § 1003.14(a). As the district court emphasized, the regulations at 8 C.F.R. § 1003.15(b)–(c), specifying the contents of a "notice to appear" filed to commence immigration court proceedings, do not cross-reference § 1229(a) or otherwise incorporate that provision's requirements. Instead, the regulations set out a detailed and exhaustive list of their own, enumerating twelve separate items that must be included in a notice to appear filed under § 1003.14(a) – with the time and date of a future hearing not among them. *See Santos-Santos*, 917 F.3d at 490 (explaining that regulations establish their own criteria for "notice to appear" rather than incorporating

---

[3] Other circuit courts also have ruled for the government in unpublished decisions. That includes our court, which has issued two per curiam opinions adopting the government's view. *See Leonard v. Whitaker*, 746 F. App'x 269, 269–70 (4th Cir. 2018); *United States v. Perez-Arellano*, 756 F. App'x 291, 294 (4th Cir. 2018).

§ 1229(a)).[4] "If the regulations did not clearly enumerate requirements for the contents of a notice to appear" for purposes of § 1003.14(a), "we might presume they *sub silentio* incorporated § 1229(a)'s definition. But the plain, exhaustive list of requirements in the . . . regulations renders that presumption inapplicable here." *Karingithi*, 913 F.3d at 1160 (citation omitted). Indeed, reading into the regulatory list an additional requirement of time and date information would render meaningless the regulations' specific command that such information must be included only "where practicable." *Id.* (quoting 8 C.F.R. § 1003.18(b)).

Both text and structure compel the conclusion that it is this separate regulatory definition of "notice to appear," and not the statutory definition in § 1229(a), that "control[s] when and how," J.A. 17, a case is commenced before an immigration judge for purposes of § 1003.14(a). First, the regulatory definition, codified at 8 C.F.R. § 1003.15, is immediately adjacent to the docketing rule, at § 1003.14, by itself a strong indication that the regulatory definition controls. *See Doe v. Cooper*, 842 F.3d 833, 844 (4th Cir. 2016) (describing presumption that adjacent subsections should be read

---

[4] Specifically, 8 C.F.R. § 1003.15(b)–(c) require that a notice to appear filed with an immigration court to commence proceedings include the following information: the nature of the proceedings, the legal authority under which the proceedings are conducted, the acts or conduct of the noncitizen alleged to be in violation of law, the charges against the noncitizen and the statutory provisions alleged to have been violated, notice that the noncitizen may be represented by counsel, the address of the immigration court where the notice to appear is being filed, a statement that the noncitizen must advise that immigration court of his or her address and telephone number, the noncitizen's name and any known aliases, the noncitizen's address, the noncitizen's registration number, the noncitizen's alleged nationality and citizenship, and the language that the noncitizen understands.

24

harmoniously). And the text of the regulatory definition of "notice to appear" is a substantive match with § 1003.14(a) in a way that the statutory definition is not. Both the regulatory provisions are concerned expressly with the contents of the Department's filing in the *immigration court*: Section 1003.14(a) provides that proceedings commence "when a charging document is filed with the Immigration Court," and § 1003.15 describes the information that must be provided by the government "to the Immigration Court." The statute, in contrast, describes what "notice" must be "given" to a *noncitizen* in removal proceedings. 8 U.S.C. § 1229(a)(1) (requiring that a notice to appear "shall be given . . . to the alien"). That concern is of course important, but it also is distinct from the question of what information must be provided to an immigration court at a case's outset – a question on which § 1229(a) is silent.[5]

Our reading of the statute and regulations is consistent not only with the decisions of the many courts listed above, but also with the position taken by the Board of Immigration Appeals. In a precedential decision issued shortly after the Supreme Court ruled in *Pereira*, the Board found that it is the regulatory definition in § 1003.15(b)–(c) that controls the required content of a "notice to appear" to initiate proceedings before an

---

[5] Cortez suggests that the title of the statutory section in question – "Initiation of removal proceedings," 8 U.S.C. § 1229 – suggests that it establishes filing as well as notice requirements. But the statutory text is clear, and clearly limited to the notice to be provided to a noncitizen in removal proceedings, giving us no warrant to reason by implication from the title. *See Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 138 S. Ct. 883, 893 (2018) (while section headings may "supply cues" as to congressional intent, they "cannot limit the plain meaning of a statutory text" (internal quotation marks omitted)).

immigration judge. *In re Bermudez-Cota*, 27 I. & N. Dec. 441, 443–45 (B.I.A. 2018). That regulation, the Board explained, does not mandate that the document specify the time and date of a future removal hearing. *Id.* at 445. Accordingly, the Board rejected a noncitizen's claim that his proceedings should be terminated because the notice to appear filed with the immigration court omitted that information. *Id.* at 447.[6]

Cortez's contrary argument relies primarily on the Supreme Court's decision in *Pereira*, holding that the requirements of 8 U.S.C. § 1229(a) are satisfied only by a "notice to appear" that includes date and time information for a removal hearing. But like the district court, as well as other courts to consider the question, we think that reliance is misplaced. *See* J.A. 17–18 (distinguishing *Pereira*); *Banegas Gomez*, 922 F.3d at 111 (same); *Santos-Santos*, 917 F.3d at 489–90 (same); *Karingithi*, 913 F.3d at 1160–61 (same).

---

[6] The Board also found in *Bermudez-Cota* that the statutory definition in § 1229(a) is satisfied by receipt of "proper notice of the time and place of [a removal] proceeding" *subsequent* to service of a "notice to appear" initially filed with an immigration court. 27 I. & N. Dec. at 447; *see also In re Mendoza-Hernandez*, 27 I. & N. Dec. 520, 529 (B.I.A. 2019) (two-step notice satisfies the INA's notice requirements). We recognize that there is disagreement on this point, with the Ninth Circuit recently holding that a two-step notice process does not comport with the statutory definition of "notice to appear" under § 1229(a) and thus does not trigger the "stop-time" rule that limits the period of a noncitizen's physical presence in the United States for purposes of withholding of removal relief. *Lopez v. Barr*, 925 F.3d 396, 405 (2019). We have no occasion to address that issue here. Cortez argues only that the notice to appear filed in immigration court failed to vest that court with "jurisdiction" under 8 C.F.R. § 1003.14(a); he raises no independent claim that he received improper notice under 8 U.S.C. § 1229(a), nor any other statutory claim.

At issue in *Pereira* was a distinct statutory question at the intersection of two INA provisions. Under the first, providing for the so-called "stop-time" rule, the period of a noncitizen's continuous presence in the United States – which governs eligibility for certain forms of relief from removal – is "deemed to end . . . when the alien is served *a notice to appear under section 1229(a)*." 8 U.S.C. § 1229b(d)(1) (emphasis added). And "section 1229(a)" is the by-now familiar statutory section specifying that a "notice to appear" must include, among other information, "[t]he time and place at which [removal] proceedings will be held." *Id.* § 1229(a)(1)(G)(i). In *Pereira*, the Court held that § 1229b(d)(1)'s stop-time rule was not triggered by a notice to appear that omitted the date and time of a removal hearing. "By expressly referencing § 1229(a)," the Court reasoned, the stop-time provision "specifies where to look to find out what 'notice to appear' means." 138 S. Ct. at 2114. And § 1229(a), in turn, "clarifies that the type of notice" called for under the stop-time provision, *id.*, is one that includes "[t]he time and place at which the [removal] proceedings will be held," *id.* (alterations in original) (quoting 8 U.S.C. § 1229(a)(1)(G)(i)).

That reasoning has no application here. As highlighted above, the regulatory definition of "notice to appear" in § 1003.14(a), unlike the stop-time provision at 8 U.S.C. § 1229b(d)(1), does *not* cross-reference "a notice to appear *under section 1229(a)*." The "glue that bond[ed]" the stop-time rule to § 1229(a)'s requirements in *Pereira*, 138 S. Ct. at 2117, in other words, is missing when it comes to § 1003.14(a)'s docketing rule. *See Banegas Gomez*, 922 F.3d at 111 ("[N]o such statutory glue bonds the Immigration Court's [authority under § 1003.14(a)] to § 1229(a)'s requirements.").

27

And for the reasons given above, there is nothing else to suggest that "*Pereira*'s definition of a 'notice to appear *under section 1229(a)*'" would "govern the meaning of 'notice to appear' under an unrelated regulatory provision." *Karingithi*, 913 F.3d at 1161. On the contrary, *Pereira* stressed repeatedly that its holding was "narrow," 138 S. Ct. at 2110, addressing the requirements of a notice to appear only in the "context" of the INA's notice and stop-time provisions, *id.* at 2115. The filing regulations at issue in this case were never mentioned in *Pereira*, and *Pereira* never indicated that its holding would apply to the "distinct . . . regulations at issue here," *Santos-Santos*, 917 F.3d at 489.

Cortez has one final argument: Even if not mandated by *Pereira*, we should read "notice to appear" under the regulations to require the same content as a "notice to appear" under § 1229(a), either because the agency did not intend to create a system with two different and distinct "notices to appear," or because whatever the agency's intent, it lacked authority to bypass the statutory specifications for a "notice to appear." We disagree.

With respect to the agency's intent, Cortez points to regulatory history suggesting, he says, that the definition at 8 C.F.R. § 1003.15(b)–(c) was promulgated in order to "implement[] the language of the [INA] indicating that the time and place of the hearing must be on the Notice to Appear," Inspection and Expedited Removal of Aliens, 62 Fed. Reg. 444, 449 (Jan. 3, 1997). But as described above, the definition in fact does *not* include that requirement; instead, the regulations expressly reject it, providing that date and time information is to be provided in a notice to appear filed under § 1003.14(a) only "where practicable." 8 C.F.R. § 1003.18(b). The regulations, that is, unambiguously *do*

28

create a dichotomy between the notice that must be given to a noncitizen under statutory § 1229(a) and the information that must be provided to an immigration court to commence proceedings under regulatory § 1003.14(a). In light of that textual clarity, we need not delve deeply into the tricky question of regulatory intent. *See Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 184 n.29 (1978) (where text is "plain and unambiguous on its face," courts do not look to "history as a guide to its meaning").

Cortez's argument fares no better when it comes to the agency's authority. According to Cortez, a regulatory definition for a "notice to appear" that does not incorporate § 1229(a)'s date and time requirement conflicts with the INA and is therefore void. But there is no conflict because, as we have explained, the regulations in question and § 1229(a) speak to different issues – filings in the immigration court to initiate proceedings, on the one hand, and notice to noncitizens of removal hearings, on the other – and the INA "says nothing about" how a case is to be docketed with the immigration court. *Karingithi*, 913 F.3d at 1160; *see also Banegas Gomez*, 922 F.3d at 110 (the INA "does not . . . explain when or how jurisdiction vests" in immigration courts (internal quotation marks omitted)). Because § 1003.14(a)'s docketing procedures are a product of regulation, not dictated by statute, the agency is free to define qualifying charging documents differently than the document described in § 1229(a) and used for other purposes.

Accordingly, we hold that it is the regulatory definition of a "notice to appear" – not the definition at 8 U.S.C. § 1229(a) – that controls whether the government properly initiated an immigration proceeding under 8 C.F.R. § 1003.14(a). The notice to appear

filed with the immigration court in Cortez's case conformed to that regulatory definition. For that reason, as well, Cortez's collateral attack on his 2011 removal order cannot succeed.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*