# UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-4190

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ANGEL ORLANDO VASQUEZ FLORES, a/k/a Angel Vasquez Flores,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Harrisonburg.  Elizabeth Kay Dillon, District Judge.  (5:18-cr-00021-EKD-JCH-1)

Argued:  December 8, 2020                    Decided:  August 16, 2021

Before MOTZ, WYNN, and FLOYD, Circuit Judges.

Reversed by unpublished per curiam opinion.

**ARGUED:** Erin Margaret Trodden, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Harrisonburg, Virginia, for Appellant.  Jean Barrett Hudson, OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellee.  **ON BRIEF:**  Juval O. Scott, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Roanoke, Virginia, for Appellant.  Thomas T. Cullen, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellant Angel Vasquez Flores challenges the district court's denial of his motion to dismiss his indictment for illegal reentry. Vasquez Flores claims that the district court should have dismissed his indictment because he was denied due process at his underlying 2011 deportation hearing. He argues that the immigration judge (IJ) failed in his duty to develop the record, and this failure resulted in erroneous bond and voluntary-departure determinations. Given this Court's recent decision in *Quintero v. Garland*, 998 F.3d 612 (4th Cir. 2021), we agree that the IJ fell short in his affirmative duty to develop the record. Because this failure necessarily prejudiced Vasquez Flores, we hold that his illegal reentry indictment should be dismissed.

I.

Born in Honduras in 1989, Vasquez Flores traveled to the United States in 2002 to escape an abusive father. In 2011, Vasquez Flores came to the attention of immigration agents when he was arrested for public intoxication.[1] Those agents located and served him with a Notice to Appear, which charged him under the Immigration and Nationality Act with being a removable noncitizen present in the United States without being admitted or paroled. Complying with the Notice, Vasquez Flores appeared for a removal hearing before the IJ on November 23, 2011.

---

[1] Vasquez Flores had some driving infractions, but no criminal history.

2

For the entirety of the hearing, Vasquez Flores, a non-English speaker, spoke to the IJ through a translator. The IJ first informed Vasquez Flores of his right to an attorney. Vasquez Flores asked whether he needed one to proceed, and the IJ replied that he did not. Vasquez Flores said he did not know if he wanted an attorney and then asked if he had a right to bail. The IJ ignored the question and asked again whether Vasquez Flores wanted an attorney. After pausing to consider, Vasquez Flores replied "no." J.A. 70, Track 1, at 1:14.

The IJ then sought some basic information. In response to questioning, Vasquez Flores stated he was not a United States citizen but was a Honduran citizen who crossed the border into the United States without permission in 2002. Before immigration agents detained Vasquez Flores, he resided with friends—some of whom were legal residents of the United States. Vasquez Flores told the IJ that he had a one-year-old child born in Virginia with his American girlfriend.[2] The IJ asked if Vasquez Flores and his girlfriend had ever discussed getting married. Vasquez Flores replied that they had. The IJ then stated that even if Vasquez Flores had married his girlfriend, he "can't stay here." J.A. 70, Track 2, at 0:00. The IJ warned Vasquez Flores that he would have to file marriage papers in Honduras before returning as the legal spouse of a United States citizen.

Replying to a question from the IJ, Vasquez Flores stated that he would voluntarily depart the United States if the IJ gave him time to do so. In a seeming non-sequitur, the IJ

---

[2] Vasquez Flores was unsure whether the mother was a United States citizen or a lawful permanent resident.

3

then stated that bond would be $5,000 and asked Vasquez Flores if it was possible that someone would pay it for him. Vasquez Flores responded, "I don't have any money here. It will have to be less." J.A. 70, Track 2, at 0:52. The IJ replied, "Well, it's not going to be less." J.A. 70, Track 2, at 0:56. The IJ then asked whether Vasquez Flores's girlfriend or someone else would be willing to buy him an airline ticket to leave. Vasquez Flores, after some consideration, replied, "no." J.A. 70, Track 2, at 1:23.

After this discussion, the IJ once again admonished Vasquez Flores that if his girlfriend wanted to marry him, she could go down to Honduras to do so and file paperwork there. If they were approved, Vasquez Flores could return to the United States with a visa. After that, the IJ asked if Vasquez Flores had any other questions. Vasquez Flores stated, "I can pay a lower bail." J.A. 70, Track 2, at 2:13. The IJ replied: "Well, I know, but I'm not giving you a lower bail. . . . In fact, now that I've signed a deportation order, you don't have a bail at all. . . . Good luck to you." J.A. 70, Track 2, at 2:15.

The hearing lasted seven minutes and thirty-seven seconds. The conversation about bail and voluntary departure was no more than ninety seconds.

Seven years later, on August 8, 2018, a federal grand jury returned a one-count indictment charging Vasquez Flores with illegal reentry in violation of 8 U.S.C. § 1326. Vasquez Flores moved to dismiss the indictment based on the same arguments we rejected in *United States v. Cortez*, 930 F.3d 350 (4th Cir. 2019)—that "a Notice to Appear that lacks the date and time of a removal hearing fail[s] to vest the immigration court[s] with jurisdiction and thus cannot serve as the basis of an illegal reentry prosecution." Opening Br. at 17. After reviewing the transcript of the 2011 deportation hearing, Vasquez Flores

4

also filed supplemental briefing arguing that the § 1326 charge should be dismissed because he had been denied due process during his 2011 deportation hearing.

On January 25, 2019, the district court denied the motion to dismiss. Vasquez Flores then pled guilty to the charge pursuant to a written plea agreement, reserving his right to appeal the denial of his motion to dismiss. The district court sentenced Vasquez Flores to three months' imprisonment. He timely appealed. We held the appeal in abeyance, pending a decision in *Cortez*. Once *Cortez* was decided—foreclosing any arguments Vasquez Flores might make about a deficient Notice to Appear[3]—the parties submitted initial briefing. We also directed the parties to file supplemental briefs addressing the scope of an IJ's duty to develop the record.

---

[3] After reviewing supplemental briefing, we agree with the government that the Supreme Court's recent decision in *Niz-Chavez v. Garland*, 151 S. Ct. 1474 (2021), has no impact on this determination. *Niz-Chavez* extended the Court's prior ruling in *Pereira v. Sessions*, 138 S. Ct. 1205 (2018), to explain "[w]hat qualifies as a notice to appear sufficient to trigger the stop-time rule" in the context of 8 U.S.C. § 1229. *Id.* at 1479 ("Today's case represents the next chapter in the story [after *Pereira*]."). And as we stated in *Cortez*, *Periera* does not control because in the context of removal proceedings, "[i]t is the regulatory definition of 'notice to appear,' and not § 1229(a)'s definition that controls in determining when a case is properly docketed with the immigration court under 8 C.F.R. § 1003.14(a)." 930 F.3d at 363. *Niz-Chavez*'s reasoning does not undermine the reasoning in *Cortez*, and thus Vasquez Flores's argument as to his Notice to Appear remain foreclosed.

II.

"This Court reviews de novo the denial of a motion to dismiss a charge under 8 U.S.C. § 1326(d)." *United States v. El Shami*, 434 F.3d 659, 663 (4th Cir. 2005).

III.

Vasquez Flores argues that his § 1326 conviction cannot stand because it is premised on his 2011 deportation hearing, which he contends is invalid. "Because a deportation order is an element of the offense of illegal reentry [under § 1326(a)], the Supreme Court has recognized that an alien can collaterally attack the propriety of the original deportation order in the later criminal proceeding." *El Shami*, 434 F.3d at 663 (citing *United States v. Mendoza-Lopez*, 481 U.S. 828, 838–39 (1987)). To succeed on collateral attacks of prior deportation orders, defendants must show (1) exhaustion of administrative remedies (or excusal from the exhaustion requirement); (2) improper deprivation of the opportunity for judicial review (or excusal); and (3) that the entry of the deportation order was fundamentally unfair. *El Shami*, 434 F.3d at 663; 8 U.S.C. § 1326(d).

As the government conceded in the district court, the IJ did not advise Vasquez Flores of his appellate rights at the hearing, even though the immigration order stated Vasquez Flores "waived" his right. J.A. 55. Based on this underlying record, both parties agree that Vasquez Flores has satisfied the first two prongs of the three-part test under § 1326(d). *See Mendoza-Lopez*, 481 U.S. at 839–40 (holding that an IJ's failure to adequately advise a noncitizen of his right to appeal "violated due process," was a

"complete deprivation of judicial review," and could "not be used to enhance the penalty for unlawful entry under § 1326").

Thus, this case turns on whether Vasquez Flores can satisfy the third prong of the § 1326(d) test: that the entry of the 2011 deportation order was fundamentally unfair. To demonstrate fundamental unfairness, "a defendant must show that (1) his due process rights were violated . . . , and (2) he suffered prejudice as a result of the defects." *United States v. Wilson*, 316 F.3d 506, 510 (4th Cir. 2003), *overruled on other grounds by Lopez v. Gonzales*, 549 U.S. 47 (2006). Here, the parties only dispute whether Vasquez Flores can satisfy the second requirement: that he can "establish prejudice for purposes of the fundamental unfairness inquiry." Resp. Br. at 17 n.7.

To establish prejudice, a defendant "must show that, but for the errors complained of, there was a reasonable probability that he would not have been deported." *El Shami*, 434 F.3d at 665. Vasquez Flores contends that had he been properly advised of his appeal rights, he would have appealed the IJ's decision to the Board of Immigration Appeals (BIA). He then argues that because he would have paid for a plane ticket to leave the United States—provided his bond was lowered—there is a reasonable probability the BIA would have reversed the IJ and allowed Vasquez Flores to voluntarily depart from the United States.

To show his entitlement to voluntary departure at the 2011 deportation hearing, Vasquez Flores was required to "establish[] by clear and convincing evidence that [he] ha[d] the means to depart the United States and intend[ed] to do so." 8 U.S.C. § 1229c(b)(1)(D). The district court ruled that Vasquez Flores did "not have a reasonable

7

probability of establishing" this burden "based on the record." J.A. 133.[4] But herein lies the issue. Vasquez Flores argues that the record was insufficient because the IJ failed in his duty to develop the record. Vasquez Flores asserts that, had the IJ properly developed the record, Vasquez Flores could have established by clear and convincing evidence that he could voluntarily depart. The IJ intermixed questions about Vasquez Flores's ability to voluntarily depart with a determination that his bond would be $5,000. But Vasquez Flores argues that had the IJ done his duty by separating these determinations and inquiring about how much money Vasquez Flores had, he could have shown by clear and convincing evidence that he was able to pay for a lower bond and a plane ticket.

Thus, whether Vasquez Flores can prevail on this argument depends on the extent to which we believe the IJ failed to adequately develop the record at Vasquez Flores's 2011 deportation hearing. Unlike Article III judges, IJs behave as a participant in immigration proceedings. Indeed, IJs have a statutory duty to "administer oaths, receive evidence, and interrogate, examine, and cross-examine the alien and any witnesses." 8 U.S.C. § 1229a(b)(1). Drawing from this statutory language, the BIA has recognized that "[i]t is appropriate for immigration judges to aid in the development of the record, and directly question witnesses, particularly where an alien appears pro se and may be unschooled in the deportation process." *In re J-F-F-*, 23 I. & N. Dec. 912, 922 (B.I.A. 2006). Joining several sister circuits, we recently held that an IJ's duty to develop the record is an

---

[4] Like the district court, we assume that "the IJ determined that Vasquez Flores did not qualify under the last prong of the statute allowing voluntary departure, a ruling that would be appealable to both the BIA and to a federal court." J.A. 132.

8

affirmative one. *See Quintero*, 998 F.3d at 626 (holding that "immigration judges have a legal duty to fully develop the record in the cases that come before them"—a duty rooted in the text of the Immigration and Nationality Act).[5]

There is no bright line test for determining whether an IJ has adequately developed the record, as "what the aforesaid duty requires of an immigration judge inevitably depends on the particulars of each case." *Id.* at 630. But in *Quintero*, we outlined "general principles to provide guidance to" IJs. *Id.* The affirmative duty "requires more than just asking a specific number of relevant questions." *Id.* at 629. Instead, IJs "have a duty to probe into, inquire of, and elicit all facts relevant to a respondent's claims." *Id.* (collecting circuit-court cases). And moreover, "even where an immigration judge 'ask[s] relevant questions,' 'the superficial quality of the questioning' may nonetheless deprive a noncitizen of a full and fair hearing." *Id.* (alteration in original) (quoting *Mendoza-Garcia*, 918 F.3d at 507). "Immigration judges must also seek clarification as needed; help the applicant identify and delineate [bases for relief] supported by his or her factual circumstances; and ultimately consider those [bases for relief]." *Id.* at 634.

---

[5] The government argues that "especially in voluntary departure cases . . . [the duty to develop the record] does not rise to the level of a Fifth Amendment constitutional requirement" because voluntary departure is discretionary. Supp. Resp. Br. at 9. But the duty to develop the record arises from the statutory requirements imposed on IJs. *See Arevalo Quintero*, 998 F.3d at 622–23 ("This obligation is rooted first and foremost in the text of the Immigration and Nationality Act, but also finds support in our jurisprudence concerning Social Security disability hearings and an international refugee law."). As such, the duty to develop the record exists even for discretionary decisions such as voluntary departure. *See Yang v. McElroy*, 277 F.3d 158, 162 (2d Cir. 2002) (per curiam) (maintaining than an IJ has a duty to establish the record in a discretionary hearing to grant asylum based on past persecution).

In this case, the IJ—without the benefit of our recent decision in *Quintero*—fell short of his affirmative duty. Had the IJ "scrupulously and contentiously probe[d]," *id.* at 641 (quoting *Agyeman v. INS*, 296 F.3d 871, 877 (9th Cir. 2002)), he would have, at a minimum, inquired about a few different matters. For example, he should have asked what Vasquez Flores meant when he said he "didn't have any money here." J.A. 70, Track 2, at 0:52. Did "here" mean in the courtroom, in the United States, or available to him at all? How much money *did* Vasquez Flores have? What bond amount would Vasquez Flores have been able to pay? If Vasquez Flores had a lower bond, would he have been able to afford a plane ticket home? The IJ's failure to ask these additional questions and flesh out the meaning behind Vasquez Flores's responses—through a translator, to boot—falls short of the affirmative duty we recognized in *Quintero*.

Recall, we must consider not only whether the IJ failed to develop the record, but also whether that failure prejudiced Vasquez Flores. We believe the IJs failure did prejudice Vasquez Flores. "By its very nature . . . an immigration judge's failure to fully develop the record regarding an issue material to the respondent's removability or eligibility for relief is not an error amenable to the ordinary prejudice inquiry." *Quintero*, 998 F.3d at 641–42. As we made clear in *Quintero*, "[s]uch a failure often makes it difficult for a reviewing court to determine whether any prejudice resulted from that very error— *precisely because the record has not been adequately developed as to the material issue.* In those situations, it would hardly be fair to rule against the noncitizen for failing to make a sufficient showing of prejudice." *Id.* at 642. Thus, we held that "an immigration judge's failure to satisfy his or her duty to fully develop the record is *presumptively* prejudicial,

10

unless the error is plainly irrelevant to, or otherwise does not hinder in any way, the reviewing court's ability to assess whether prejudice occurred." *Id.*

The presumption clearly applies here. With an adequately developed record, the IJ's bond determination may have been lowered on appeal. *See Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) ("Detention of an indigent for 'inability to post money bail' is impermissible if the individual's 'appearance . . . could reasonably be assured by one of the alternate forms of release.'" (quoting *Pugh v. Rainwater*, 572 F.2d 1053, 1058 (5th Cir. 1978) (en banc))). On appeal, a court—considering all the bond factors relevant to Vasquez Flores—could have found $5,000 too high an amount to pay and could have lowered it so that Vasquez Flores could afford both bond and a plane ticket to voluntarily depart the United States.

Accordingly, we hold that Vasquez Flores was prejudiced by the IJ's failure to develop the record. He therefore has satisfied the fundamental unfairness prong and all other requirements under § 1326(d) for challenging his underlying 2011 deportation.


IV.

Our recent decision in *Quintero* requires more of IJs than a few questions generating conclusory assumptions. IJs must do more: In the case of this pro se petitioner, the IJ at Vazquez Flores's underlying 2011 deportation hearing was required to seek additional information before determining that Vazquez Flores was not eligible for voluntary departure. The IJ's failure necessarily prejudiced Vasquez Flores. Because Vasquez

11

Flores satisfies the three requirements for a collateral attack of his conviction for unlawful reentry, the judgment of the district court is

REVERSED.