**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellant*,

v.

JUAN CARLOS BASTIDE-HERNANDEZ,
AKA Jesus Chavez-Gongoria, AKA
Domingo Chavez-Lopez, AKA
Francisco Soto Hernandez,
*Defendant-Appellee.*

No. 19-30006

D.C. No.
1:18-cr-02050-
SAB-1

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Stanley A. Bastian, Chief District Judge, Presiding

Argued and Submitted En Banc March 22, 2022
Pasadena, California

Filed July 11, 2022

Before: Mary H. Murguia, Chief Judge, and M. Margaret
McKeown, Kim McLane Wardlaw, Consuelo M. Callahan,
Morgan Christen, John B. Owens, Michelle T. Friedland,
Ryan D. Nelson, Daniel P. Collins, Danielle J. Forrest and
Patrick J. Bumatay, Circuit Judges.

Opinion by Judge Owens;
Concurrence by Judge Friedland;
Partial Concurrence and Partial Dissent by Judge Collins

## SUMMARY[*]

### Criminal Law

The en banc court reversed the district court's dismissal of an indictment charging illegal reentry after removal in violation of 8 U.S.C. § 1326, and remanded for further proceedings, in a case in which the district court determined that defects in the notice to appear ("NTA")—which initiated the immigration proceedings against the defendant resulting in his eventual removal from the United States—deprived the immigration court of subject matter jurisdiction to effect the removal in the first place, thereby rendering the entire immigration proceeding "void ab initio."

Consistent with Ninth Circuit precedent and that of every other circuit to consider this issue, the en banc court held that the failure of an NTA to include time and date information does not deprive the immigration court of subject matter jurisdiction, and thus the defendant's removal was not "void ab initio," as the district court determined.

The en banc court explained that 8 C.F.R. § 1003.14(a)—a regulation by which the Attorney General purported to condition the "jurisdiction" of immigration courts upon the filing of a charging document, including NTAs—is a claim-processing rule not implicating the court's adjudicatory authority. The en banc court read § 1003.14(a)'s reference to "jurisdiction" in a purely colloquial sense. The en banc court wrote that although the statutory definition of an NTA requires the date and time of

    [*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the removal hearing, 8 U.S.C. § 1229(a)(1)(G)(i), this provision chiefly concerns the notice the government must provide noncitizens regarding their removal proceedings, not the authority of immigration courts to conduct those proceedings. The panel concluded that the import of the holding in this case, in concert with that in *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019), is thus that § 1003.14(a) is a nonjurisdictional claim-processing rule, and the filing of an undated NTA that is subsequently supplemented with a notice of hearing fully complies with the requirements of that regulation.

Concurring in the judgment, Judge Friedland wrote separately to urge the Government to adhere to the statutory requirements for the NTA. She wrote that there is a strong argument that a transitional provision in the Illegal Immigration Reform and Immigrant Responsibility Act shows that Congress intended service of the NTA to be a jurisdictional requirement. She encouraged the Government to redouble its efforts to comply with the statute—both to minimize disruption to immigration proceedings in the event the Supreme Court disagrees with the court's holding today, and because providing the required information at the outset better serves clarity, efficiency, and due process in any event.

Judge Collins concurred in the majority opinion in all respects except for footnote 10, which remands "for the district court to reconsider its § 1326(d) analysis" in light of *United States v. Palomar-Santiago*, 141 S. Ct. 1615 (2021). He wrote that (1) having properly reversed the district court's dismissal of the indictment, which did not rest on an application of § 1326(d), there is no need for this court to instruct the district court to consider any particular issue as the case proceeds on remand; (2) the majority's instructions

to reconsider the § 1326(d) issue violate the party presentation principle, under which courts normally decide only questions presented by the parties; and (3) the particular issues that the majority conjures up for remand are both irrelevant and meritless.

## COUNSEL

Scott A. C. Meisler (argued), Attorney; Lisa H. Miller, Deputy Assistant Attorney General; Kenneth A. Polite Jr., Assistant Attorney General; Patrick J. Glen, Senior Litigation Counsel; John W. Blakeley, Assistant Director; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; Vanessa R. Waldref, United States Attorney; Richard C. Burson, Assistant United States Attorney; United States Attorney's Office, Yakima, Washington; for Plaintiff-Appellant.

Paul E. Shelton Jr. (argued), Federal Defenders of Eastern Washington, Yakima, Washington, for Defendant-Appellee.

Richard W. Mark, Amer S. Ahmed, Alexandra Perloff-Giles, and Cassarah M. Chu, Gibson Dunn & Crutcher LLP, New York, New York, for Amici Curiae Former Immigration Judges and Members of the Board of Immigration Appeals.

**OPINION**

OWENS, Circuit Judge:

The United States appeals from the district court's dismissal of an indictment charging Juan Carlos Bastide-Hernandez with illegal reentry after removal, in violation of 8 U.S.C. § 1326. According to the district court, defects in the notice to appear ("NTA")—which initiated the immigration proceedings against Bastide-Hernandez resulting in his eventual removal from the United States— deprived the immigration court of subject matter jurisdiction to effect the removal in the first place, thereby rendering the entire immigration proceeding "void ab initio."

Consistent with our own precedent and that of every other circuit to consider this issue, we hold that the failure of an NTA to include time and date information does not deprive the immigration court of subject matter jurisdiction, and thus Bastide-Hernandez's removal was not "void ab initio," as the district court determined. We reverse the district court's dismissal and remand for further proceedings.

## I.  BACKGROUND AND PROCEDURAL HISTORY

Bastide-Hernandez, a citizen and native of Mexico, first entered the United States in 1996 without inspection. In the years that followed, he was convicted of narcotics and firearms offenses, as well as assault with a deadly weapon.

Bastide-Hernandez has also had extensive contact with the immigration system. In April 2006, he was placed in removal proceedings by U.S. Immigration and Customs Enforcement ("ICE"). ICE sent NTAs to his residence and his immigration detention facility, but neither specified the date or time of the hearing. While ICE later sent a curative

notice of hearing for June 14, 2006, via fax to an unidentified custodial officer at the detention facility, Bastide-Hernandez denies receiving the notice of hearing, and the record remains unclear if he did. Though we lack a transcript or recording of the June 14, 2006, hearing, on appeal, Bastide-Hernandez concedes he attended the hearing via videoconference, and the immigration judge subsequently ordered his removal from the United States.

Despite his removal, Bastide-Hernandez returned to the United States. In 2018, a grand jury in the Eastern District of Washington returned an indictment for illegal re-entry after removal in violation of 8 U.S.C. § 1326(a).[1] Bastide-Hernandez moved to dismiss the indictment and argued that the NTA's omission of the date and time of his removal hearing meant that the immigration court lacked subject matter jurisdiction over his case. Because the immigration court lacked subject matter jurisdiction, the argument went, the removal order underlying the indictment was "void and without legal effect." And without the underlying removal, Bastide-Hernandez contended, the § 1326 indictment was necessarily defective.

The district court agreed with Bastide-Hernandez and dismissed the indictment. It treated the defective NTA as depriving the immigration court of subject matter jurisdiction and concluded that "[a]bsent jurisdiction, the removal order is void on its face and it is 'the duty of this

---

[1] Section 1326(a) requires the government to prove: (1) the defendant was removed from the United States; (2) "thereafter the defendant knowingly and voluntarily reentered the United States without having obtained the consent of the Attorney General or the Secretary of the Department of Homeland Security, to reapply for admission into the United States"; and (3) "the defendant was [a noncitizen] at the time of reentry." Ninth Circuit Model Criminal Jury Instructions § 7.6 (2022).

and every other court to disregard it.'"  The court explained that in addition to 8 U.S.C. § 1326(d), which is the statutory vehicle to collaterally attack the underlying deportation order,[2] "there remains a free-standing due process right to challenge a deportation order issued from a court that lacked subject-matter jurisdiction in a subsequent criminal case in which that order is used as an element, as the immigration court proceeding, its orders, and any protections it may have purported to offer were void ab initio."[3]

The United States appealed, and a three-judge panel held that the defective NTA did not deprive the immigration court of subject matter jurisdiction and remanded the case for further proceedings.  *United States v. Bastide-Hernandez*, 3 F.4th 1193, 1196–98 (9th Cir.), *vacated*, 20 F.4th 1230 (9th Cir. 2021).  Judge Milan Smith concurred in the

---

[2] Section 1326(d) provides:

> In a criminal proceeding under this section, [a noncitizen] may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) unless the [noncitizen] demonstrates that—
>
> **(1)** the [noncitizen] exhausted any administrative remedies that may have been available to seek relief against the order;
>
> **(2)** the deportation proceedings at which the order was issued improperly deprived the [noncitizen] of the opportunity for judicial review; and
>
> **(3)** the entry of the order was fundamentally unfair.

[3] In a footnote, the district court explained that if it "were to apply the 8 U.S.C. § 1326(d) factors, it would likely find them met" in part because the 2006 removal order was "fundamentally unfair."

judgment because Bastide-Hernandez failed to satisfy the § 1326(d) requirements, but read our decisions in *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019), and *Aguilar Fermin v. Barr*, 958 F.3d 887 (9th Cir. 2020), to "compel the conclusion that the Immigration Court lacked jurisdiction to issue a removal order because the court never cured the omission of the date and time of the hearing" from the NTA. *Bastide-Hernandez*, 3 F.4th at 1198 (M. Smith, J., concurring).

Our court voted to take this case en banc to examine what effect, if any, a defective NTA has on an immigration court's subject matter jurisdiction.

## II. DISCUSSION

### A. Standard of Review

We review a district court's decision to dismiss a criminal indictment de novo, *United States v. W.R. Grace*, 504 F.3d 745, 751 (9th Cir. 2007), as we do its conclusion that a defect in removal proceedings precludes reliance upon the resulting order of removal in a subsequent prosecution under 8 U.S.C. § 1326, *United States v. Reyes-Bonilla*, 671 F.3d 1036, 1042 (9th Cir. 2012).

### B. A Defective NTA Does Not Affect the Immigration Court's "Subject Matter Jurisdiction"

"Jurisdiction," the Supreme Court has cautioned, "is a word of many, too many, meanings." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998). It has been invoked, often imprecisely, in reference to forms of relief a court is empowered to grant, *see id.*, duties a judge is authorized to perform, *see, e.g.*, 8 C.F.R. § 1003.14(c), and

even the territorial boundaries of a court's authority, *see, e.g.*, 8 C.F.R. § 1003.19(c)(1). But rules of *subject matter* jurisdiction are sui generis. They define the class of cases a court has the "statutory or constitutional *power* to adjudicate." *Steel Co.*, 523 U.S. at 89 (emphasis in original). Such rules can never be waived or forfeited, courts are obligated to raise them *sua sponte* if the parties fail to do so, and if subject matter jurisdiction is found lacking at any stage of litigation, the suit must be dismissed (sometimes at considerable cost to the parties and the court).[4] *See Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). In short, the consequences of denominating any rule subject matter jurisdictional are "drastic." *Id.*

Thus, the Supreme Court has sought to impose "discipline" on the use of the term by distinguishing between rules properly implicating a court's adjudicatory authority and mere claim-processing rules. *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). Unlike rules of subject matter jurisdiction, claim-processing rules "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times," *id.*, and "may be forfeited if the party asserting the rule waits too long to raise the point," *Manrique v. United States*, 137 S. Ct. 1266, 1272 (2017) (internal quotation marks omitted). This is not to say the rules are optional. A timely objection to a claim-processing

---

[4] Less clear, however, is whether subject matter jurisdiction can be attacked collaterally. *See Kontrick v. Ryan*, 540 U.S. 443, 455 n.9 (2004) (noting, as dictum, that subject matter jurisdiction "may not be attacked collaterally"); *United States v. Cortez*, 930 F.3d 350, 357 (4th Cir. 2019) (explaining that "the interest in the finality of judgments is sufficiently strong" that a collateral attack on subject matter jurisdiction will be permitted "only in exceptional circumstances"). For the purposes of this opinion, we assume that it can, though we do not decide this issue.

defect can in some cases warrant dismissal of the case. *See, e.g.*, *id.* at 1274. But the Supreme Court "has long rejected the notion that all mandatory prescriptions, however emphatic, are properly typed jurisdictional." *Gonzalez*, 565 U.S. at 146 (internal quotation marks and ellipsis omitted).

As relevant here, the Attorney General has promulgated a regulation purporting to condition the "jurisdiction" of immigration courts upon the filing of a charging document, including NTAs. 8 C.F.R. §§ 1003.13, 1003.14(a).[5] And the question is whether this regulation goes to the subject matter jurisdiction of immigration courts, with all the procedural consequences attending the use of that label. We join the emerging consensus of our sister circuits in holding that it does not.[6] Section 1003.14(a) is a claim-processing rule not implicating the court's adjudicatory authority, and we read its reference to "jurisdiction" in a purely colloquial sense.

The Fourth Circuit's reasoning in *United States v. Cortez* is especially persuasive. 930 F.3d 350 (4th Cir. 2019). Like Bastide-Hernandez, the defendant in that case was deported following immigration proceedings commenced with an undated NTA. *Id.* at 353–54. He was orally notified of the

---

[5] 8 C.F.R. § 1003.14(a) provides, in part, "Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service."

[6] *See Lopez-Munoz v. Barr*, 941 F.3d 1013, 1016 (10th Cir. 2019); *Perez-Sanchez v. U.S. Att'y Gen.*, 935 F.3d 1148, 1150 (11th Cir. 2019); *Pierre-Paul v. Barr*, 930 F.3d 684, 691–93 (5th Cir. 2019), *abrogated in part on other grounds by Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021); *United States v. Cortez*, 930 F.3d 350, 358–62 (4th Cir. 2019); *Ortiz-Santiago v. Barr*, 924 F.3d 956, 962–64 (7th Cir. 2019).

date and time of his removal hearing and attended it via videoconference, but he never challenged the immigration court's jurisdiction or appealed the order of removal. *Id.* In a subsequent prosecution for illegal reentry, he argued, for the first time, that the NTA was insufficient to vest subject matter jurisdiction in the immigration court under 8 C.F.R. § 1003.14(a) because it lacked date and time information, and thus the resulting order of removal was void. *Id.* at 354–55. After disputing (without conclusively overruling) the parties' assumption that subject matter jurisdiction can be collaterally attacked in general or attacked without satisfying the 8 U.S.C. § 1326(d) requirements, *id.* at 356–58, the Fourth Circuit held that 8 C.F.R. § 1003.14(a) "is an internal docketing rule, not a limit on an immigration court's 'jurisdiction' or authority to act," *id.* at 358.

As the Fourth Circuit explained, "the immigration courts' adjudicatory authority over removal proceedings comes not from the agency regulation codified at 8 C.F.R. § 1003.14(a), but from Congress: It is the [Immigration and Nationality Act ("INA")] that explicitly and directly grants that authority." *Id.* at 360 (internal quotation marks omitted); *see also* 8 U.S.C. § 1229a(a)(1) ("An immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of [a noncitizen]."). Nothing in the INA, the Fourth Circuit observed, conditions an immigration court's adjudicatory authority "on compliance with rules governing notices to appear, whether statutory, *see* 8 U.S.C. § 1229(a) (statutory definition of notice to appear), or regulatory, *see* 8 C.F.R. § 1003.18(b)." *Cortez*, 930 F.3d at 360. Nor could that condition spring from 8 C.F.R. § 1003.14(a) because jurisdiction ordinarily operates as an external constraint on a court's authority to act. "To deem such a regulation jurisdictional would be to say that the Attorney General is in effect, . . . *telling himself*

what he may or may not do." *Id.* (internal quotation marks omitted) (emphasis in original); *see also Garcia v. Lynch*, 786 F.3d 789, 797 n.2 (9th Cir. 2015) (Berzon, J., concurring); *accord Perez-Sanchez v. U.S. Att'y Gen.*, 935 F.3d 1148, 1155 (11th Cir. 2019); *Ortiz-Santiago v. Barr*, 924 F.3d 956, 963 (7th Cir. 2019).

We agree. Although the statutory definition of an NTA requires that it contain the date and time of the removal hearing, 8 U.S.C. § 1229(a)(1)(G)(i), this provision chiefly concerns the notice the government must provide noncitizens regarding their removal proceedings, not the authority of immigration courts to conduct those proceedings. *See Pereira v. Sessions*, 138 S. Ct. 2105, 2115 (2018). Nowhere does the statute imply, much less "clearly state," that its requirements are jurisdictional. *See Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013) ("We inquire whether Congress has clearly stated that the rule is jurisdictional; absent such a clear statement, we have cautioned, courts should treat the restriction as nonjurisdictional in character." (internal quotation marks and alteration omitted)). And Department of Justice ("DOJ") regulations cannot define the subject matter jurisdiction of immigration courts, because Congress gave the Attorney General "no authority to adopt rules of jurisdictional dimension." *Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 558 U.S. 67, 84 (2009). The only sensible way to read 8 C.F.R. § 1003.14(a), then, is as a docketing rule whose function extends no further than providing for "the orderly administration of proceedings, including deportation proceedings, before the immigration judges." *Cortez*, 930 F.3d at 362.

This reading is consistent with the purpose and history of § 1003.14. *Cf. Gundy v. United States*, 139 S. Ct. 2116, 2126 (2019) (plurality) (explaining "competing views" of statutory interpretation). The 1985 Notice of Proposed Rulemaking for § 1003.14's predecessor regulation, 8 C.F.R. § 3.14, notes that then-existing DOJ regulations permitted the Immigration and Naturalization Service (the predecessor of the Department of Homeland Security) to terminate removal proceedings at any time prior to the commencement of the hearing. Aliens and Nationality; Rules of Procedure for Proceedings Before Immigration Judges, 50 Fed. Reg. 51,693, 51,693 (Dec. 19, 1985). Thus, by fixing the point at which proceedings commence (and the immigration court's authority is invoked), the regulation "limit[ed] the Service's ability to cancel an Order to Show Cause," and provided the Executive Office for Immigration Review "with the ability to utilize its resources efficiently by ensuring optimal scheduling of matters on its hearing calendars." *Id.* Although the regulation and notice of proposed rulemaking speak of "jurisdiction," clearly their focus was the internal, operational efficiency of the immigration review process, *see Cortez*, 930 F.3d at 361–62, a hallmark of a claim-processing rule unrelated to subject matter jurisdiction.

This reading is also consistent with how we treat charging documents in other contexts. Federal Rule of Civil Procedure 3, for example, provides that "[a] civil action is commenced by filing a complaint with the court." But the failure to comply with this rule is not a defect of jurisdictional proportion. *See Schlesinger v. Councilman*, 420 U.S. 738, 742 n.5 (1975) ("[S]o long as the court's subject-matter jurisdiction actually existed and adequately appeared to exist from the papers filed, . . . any defect in the manner in which the action was instituted and processed is

not itself jurisdictional and does not prevent entry of a valid judgment."). And although a criminal indictment must, as a matter of constitutional law, charge any facts that enhance the defendant's sentence beyond the statutory maximum, *Apprendi v. New Jersey*, 530 U.S. 466, 476 (2000), omission of those facts (or any other defect in the indictment) will not oust the court's jurisdiction, *United States v. Cotton*, 535 U.S. 625, 630–31 (2002). If an indictment defect of constitutional magnitude does not affect an Article III court's subject matter jurisdiction, defects in an NTA likewise have no bearing on an immigration court's adjudicatory authority.

Our conclusion here is consistent with *Karingithi*, 913 F.3d 1158. At issue in *Karingithi* was whether the filing of an undated NTA, subsequently supplemented with a notice of hearing that specified the date and time of the removal hearing, was sufficient to vest jurisdiction in the immigration court. *Id.* at 1158. We answered in the affirmative. *Id.* at 1159–60. We acknowledged the Supreme Court's decision in *Pereira* that an undated NTA does not qualify as a notice to appear under 8 U.S.C. § 1229(a) for the purposes of the stop-time rule. *Id.* at 1161; *see also Pereira*, 138 S. Ct. at 2110; 8 U.S.C. § 1229b(d)(1). But we held that DOJ "regulations, not § 1229(a), define when [immigration court] jurisdiction vests," and "[a] notice to appear need not include time and date information to satisfy this standard." *Karingithi*, 913 F.3d at 1160.

In so holding, we borrowed the "jurisdiction vests" phraseology of 8 C.F.R. § 1003.14(a). But, like the regulation itself, this reference to "jurisdiction" was colloquial—that is to say, not denoting "subject matter

jurisdiction" or the court's fundamental power to act.[7]  Thus, the import of our holding in this case, in concert with that in *Karingithi*, is that § 1003.14(a) is a nonjurisdictional claim-processing rule, and the filing of an undated NTA that is subsequently supplemented with a notice of hearing fully complies with the requirements of that regulation.[8]  *See id.* at 1162; *Aguilar Fermin*, 958 F.3d at 895 (extending *Karingithi* to NTAs that fail to specify the location of the removal hearing).[9]

---

[7] In the wake of *Karingithi*, some practitioners interpreted its references to "jurisdiction" as applying to the immigration court's subject matter jurisdiction, and some case law can be read to suggest that this is the correct reading.  *See, e.g.*, *Cortes-Maldonado v. Barr*, 978 F.3d 643, 646 n.2 (9th Cir. 2020); *Aguilar Fermin v. Barr*, 958 F.3d 887, 891–95 (9th Cir. 2020); *United States v. Gomez*, 499 F. Supp. 3d 680, 685–88 (N.D. Cal. 2020); *United States v. Martinez-Gonzalez*, 417 F. Supp. 3d 1349, 1351–53 (E.D. Wash. 2019), *appeal voluntarily dismissed*, No. 19-30252 (9th Cir. Feb. 10, 2020).  To the extent that courts or practitioners have read *Karingithi* as holding that the Attorney General's regulations govern the immigration court's subject matter jurisdiction, today we clarify that this is not the law in the Ninth Circuit.

[8] To be clear, *Karingithi* did not address whether a timely notice of hearing supplying time and date information missing from the NTA was *required* to comply with § 1003.14(a) and neither do we.  913 F.3d at 1162.

[9] After *Niz-Chavez*, the information required in an NTA under § 1229(a) must appear in a single document to trigger the stop-time rule. 141 S. Ct. at 1480.  But that decision did not concern the docketing procedure set forth in 8 C.F.R. § 1003.14(a).  Thus, while the supplement of a notice of hearing would not cure any NTA deficiencies under § 1229(a), we continue to hold that it suffices for purposes of § 1003.14(a).  *See Karingithi*, 913 F.3d at 1161 (noting that the definition of "'notice to appear *under section 1229(a)*' does not govern the meaning of 'notice to appear' under an unrelated regulatory provision").

Because the district court erroneously concluded that the undated NTA precipitating Bastide-Hernandez's removal in 2006 was insufficient to vest subject matter jurisdiction in the immigration court and thus rendered its removal order "void ab initio," we reverse and remand for further proceedings consistent with this opinion.[10]

**REVERSED AND REMANDED.**

---

[10] The district court assumed that "a challenge to the immigration court's jurisdiction need not comply with § 1326(d)'s limitations on collateral attacks." But the court did not have the benefit of the Supreme Court's recent decision in *United States v. Palomar-Santiago*, 141 S. Ct. 1615 (2021). We remand for the district court to reconsider its § 1326(d) analysis in light of that decision. And at that time, counsel for Bastide-Hernandez can unequivocally state whether he believes § 1326(d) relief is available. We do not interpret counsel's statements at oral argument as definitively as the partial dissent does. *Compare* Oral Argument at 56:47–56:52 ("If you say I do not win on the jurisdiction issue, remand for 1326(d) is not necessary."), *with* Oral Argument at 30:18–30:27 ("[A]t worst, this panel must remand to the district court because Mr. Bastide-Hernandez was not given an opportunity to present evidence regarding 1326(d) . . . .").

We also leave it to the district court to determine on remand whether Bastide-Hernandez forfeited his claim-processing rights by failing to raise them during his 2006 immigration proceedings, and if forfeiture is affected by whether he received a notice of hearing.

FRIEDLAND, Circuit Judge, concurring in the judgment:

I agree that we should reverse and remand for the district court to decide whether Bastide-Hernandez has satisfied all three requirements of 8 U.S.C. § 1326(d). *See United States v. Palomar-Santiago*, 141 S. Ct. 1615, 1620–21 (2021).[1] I write separately, however, to urge the Government to adhere to the statutory requirements for the notice to appear ("NTA"). *See* 8 U.S.C. § 1229(a)(1). Although our court today holds that service of an NTA is not required to confer jurisdiction on the immigration court, there are strong

---

[1] I read § 1326(d) to apply to *any* collateral attack on an underlying removal order that is raised during a prosecution for illegal reentry—regardless of whether that collateral attack raises a jurisdictional flaw. *See Palomar-Santiago*, 141 S. Ct. at 1620 (holding that the statute "provides that defendants charged with unlawful reentry 'may not' challenge their underlying removal orders 'unless' they 'demonstrat[e]' that three conditions are met" (alteration in original) (quoting 8 U.S.C. § 1326(d))). Accordingly, I believe a remand for consideration of the § 1326(d) factors would be necessary even if the majority were holding that defects in the notice to appear deprived the immigration court of jurisdiction over Bastide-Hernandez's original removal proceeding. An absence of jurisdiction in the underlying removal proceeding would, at most, satisfy the § 1326(d)(3) requirement of fundamental unfairness—the requirements of § 1326(d)(1) (exhaustion of available administrative remedies) and § 1326(d)(2) (lack of opportunity for judicial review) would still need to be satisfied for a collateral attack to succeed. And although the majority rejects Bastide-Hernandez's theory that defects in the notice to appear deprived the immigration court of jurisdiction, Bastide-Hernandez is not precluded from prevailing on remand by arguing that those defects are claim-processing violations (or, for that matter, by raising other challenges to his original removal proceeding, provided those challenges are not waived)—as long as he can meet the requirements of § 1326(d). Because the district court made no factual findings as to when Bastide-Hernandez learned of his hearing, whether and how he participated in the hearing, what transpired during the hearing, or whether he knowingly waived his right to appeal, we cannot conduct the § 1326(d) analysis on the record before us.

arguments for the contrary position.  The Supreme Court may therefore hold that jurisdiction vests over removal proceedings only upon service of a single, statutorily compliant NTA.  To minimize disruption to immigration proceedings if the Supreme Court so holds, and because providing the required information at the outset is a better practice in any event, I urge the Government not to interpret the majority opinion as a license for complacency.

In 1996, Congress made sweeping changes to the Immigration and Nationality Act ("INA") in a law called the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA").  *See* Pub. L. 104-208, div. C, 110 Stat. 3009-546 (1996).  Bastide-Hernandez makes a strong argument that a transitional provision in IIRIRA shows that Congress intended service of the NTA, as defined in IIRIRA, to be a jurisdictional requirement.

Among IIRIRA's many changes was a modification to how notice of charges of removability must be given to noncitizens.  Prior to IIRIRA, the charging document used to begin removal proceedings was called an "order to show cause."  8 U.S.C. § 1252b(a)(1) (1994); *see Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1484 (2021).  IIRIRA dispensed with the order to show cause and defined a new charging document, called a "notice to appear," in a newly enacted section 239 of the INA entitled "Initiation of removal proceedings."  IIRIRA sec. 304, § 239, 110 Stat. at 3009-587 to -589.  As codified, that section provides in relevant part:

> In removal proceedings under section 1229a of this title, written notice (in this section referred to as a "notice to appear") shall be given in person to the alien (or, if personal service is not practicable, through service by mail to the alien or to the alien's counsel of

> record, if any) specifying the following: . . .
> The time and place at which the proceedings
> will be held.

8 U.S.C. § 1229(a)(1), (a)(1)(G)(i).[2]

To guide the transition to IIRIRA, Congress included a provision explaining how the law would affect noncitizens already in exclusion or deportation proceedings. *See* IIRIRA sec. 309, 110 Stat. at 3009-625 to -627. In general, Congress instructed that IIRIRA's new provisions would not apply to cases already in progress, either at the agency level or on judicial review. *Id.* sec. 309(c)(1), 110 Stat. at 3009-625. But for certain in-progress proceedings in which an evidentiary hearing had not yet been held by the time IIRIRA went into effect, Congress gave the Attorney General discretion to proceed under the post-IIRIRA framework. *Id.* sec. 309(c)(2), 110 Stat. at 3009-626. If the Attorney General chose to invoke the new framework, Congress specified that "the notice of hearing provided to the alien under section 235 or 242(a) of [the INA] shall be valid as if provided under section 239 of [the INA] (as amended by this subtitle) *to confer jurisdiction* on the immigration judge." IIRIRA sec. 309(c)(2), 110 Stat. at 3009-626 (emphasis added). As discussed, section 239 of the INA is the provision that defines the NTA, codified at 8 U.S.C. § 1229. Although § 1229 does not itself use the word "jurisdiction," the transition statute's use of the word in reference to the notice requirements of § 1229 suggests that Congress understood the NTA to have jurisdictional significance.

---

[2] Section 1229a provides that "[a]n immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien." 8 U.S.C. § 1229a(1).

As Bastide-Hernandez also argues, Congress's reference to "jurisdiction" is consistent with the Executive Branch's apparent understanding, both before and after IIRIRA, that a charging document is a prerequisite to the vesting of jurisdiction in the immigration court.  After IIRIRA, the Attorney General announced plans to replace the "Order to Show Cause, Form I-221" with the "Notice to Appear, Form I-862" as the charging document used to initiate removal proceedings.  Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 444, 449 (proposed January 3, 1997).  In the same proposed rulemaking, the Attorney General reaffirmed a longstanding rule that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service."  62 Fed. Reg. at 456 (to be codified at 8 C.F.R. § 3.14).[3]  That language has since remained unchanged in a regulation entitled "Jurisdiction and commencement of proceedings," now codified at 8 C.F.R. § 1003.14.  The use of "and" in both the text and title of the regulation suggests that the Attorney General has understood the word "jurisdiction" to

---

[3] The regulations first used a version of this language in 1985. Aliens and Nationality; Rules of Procedure for Proceedings Before Immigration Judges, 50 Fed. Reg. 51,693, 51,697 (Dec. 19, 1985) (proposed rule) ("Jurisdiction vests and proceedings before an Immigration Judge commence when a charging document is filed with the Office of the Immigration Judge.").  In 1987, in response to criticism that the wording was "not detailed enough to cover all situations," the Attorney General expressed that the rule was "a simple, direct statement of jurisdiction" but added an exception to exclude bond proceedings. Aliens and Nationality; Rules of Procedure for Proceedings Before Immigration Judges, 52 Fed. Reg. 2931, 2932, 2937 (Jan. 29, 1987) (final rule).  In these regulations, "the Service" refers to the Immigration and Naturalization Service, the predecessor of the Department of Homeland Security.

do work beyond indicating when proceedings commence—that is, beyond the work of a claim-processing rule that "promote[s] the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times," *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). That understanding of the regulation would be consistent with Congress's suggestion in IIRIRA that an NTA is what confers jurisdiction on the immigration court. *See* IIRIRA sec. 309(c)(2), 110 Stat. at 3009-626.

If service of an NTA under 8 U.S.C. § 1229 is a jurisdictional requirement, then the Supreme Court's decisions in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), and *Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021), would seem to compel the conclusion that a notice lacking the time or place of proceedings is inadequate to vest jurisdiction. The Supreme Court held in *Pereira* that "[a] notice that does not inform a noncitizen when and where to appear for removal proceedings is not a 'notice to appear under section 1229(a),'" 138 S. Ct. at 2110 (quoting 8 U.S.C. § 1229b(d)(1)), and clarified in *Niz-Chavez* that an NTA must be a single document containing all statutorily required information to trigger the stop-time rule for cancellation of removal, 141 S. Ct. at 1486. Given that the Supreme Court has on two occasions strictly enforced the statutory NTA requirements, and given that there is evidence that Congress intended an NTA to be necessary for jurisdiction over removal proceedings, the Supreme Court may eventually disagree with our court's holding today. To minimize the disruption that would follow from a holding that jurisdiction is lacking in proceedings that did not begin with a statutorily compliant NTA, I urge the Government to ensure that, going forward, all NTAs contain the information required by statute.

Even aside from minimizing potential disruption, there are good reasons for the Government to ensure that all putative NTAs contain the time and place of removal proceedings. The Supreme Court has observed that "[c]onveying such time-and-place information to a noncitizen is an essential function of a notice to appear, for without it, the Government cannot reasonably expect the noncitizen to appear for his removal proceedings." *Pereira*, 138 S. Ct. at 2115. If the Government does not provide this information at the outset, noncitizens may be deprived of a meaningful opportunity to prepare for their hearings. For instance, the Government "could serve a document labeled 'notice to appear' without listing the time and location of the hearing and then, years down the line, provide that information a day before the removal hearing." *Id.*

An amicus brief filed by former immigration judges elaborates on why it better serves clarity, efficiency, and due process to include the time and location of the hearing in an NTA in the first instance. As amici explain, incomplete initial notice documents create uncertainty both for noncitizens, who are left in the dark as to when and where a potentially life-changing proceeding will be held, and for immigration judges, who cannot be sure if a case can proceed. Amici also note that the Government's notice-by-installment practice creates additional fact-finding obligations for immigration judges, who may need to look to multiple documents to determine whether informational gaps in the initial notice have been filled. And amici caution that, because immigration judges are already overburdened and face pressure to complete cases, ambiguities about notice may lead immigration judges to order noncitizens removed when they fail to show up at their hearings, even if the noncitizens never received notice of those hearings at all.

In recent years, the Government has failed to comply with the time-and-place requirements of 8 U.S.C. § 1229(a)(1)(G)(i). *See Pereira*, 138 S. Ct. at 2111 (quoting the Government's statement during oral argument in 2018 that "almost 100 percent" of "notices to appear omit the time and date of the proceeding over the last three years"). At oral argument before our court, the Government admitted that, despite progress in this area, some NTAs will continue to have a placeholder reading "to be determined" or "to be set" instead of the time and date of the hearing. This admission shows that, more than a year after the Supreme Court's warning in *Niz-Chavez*, the Government still is not "turn[ing] square corners" when it issues NTAs. 141 S. Ct. at 1486. I urge the Government to redouble its efforts to comply with the statute—and to take seriously the possibility that statutory noncompliance might have jurisdictional consequences.

COLLINS, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority opinion in all respects except for footnote 10, which remands "for the district court to reconsider its § 1326(d) analysis" in light of *United States v. Palomar-Santiago*, 141 S. Ct. 1615 (2021). For three reasons, I see no basis for us to order the district court to undertake the further § 1326(d) analysis that is sketched in that footnote.

First, having properly reversed the district court's dismissal of the indictment, which did not rest on an application of § 1326(d), there is no need for us to specify what particular issues should or should not be considered as the case proceeds on remand. With the indictment thus

reinstated, the case will proceed in the ordinary course, and the parties on remand may raise whatever issues they think are appropriate. There simply is no need for us to instruct the district court to consider any particular issue.

Second, in addition to being unnecessary, the majority's instructions to reconsider the § 1326(d) issue violate the party presentation principle, under which "courts normally decide only questions presented by the parties." *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (simplified); *see also id*. ("[A]s a general rule, our system is designed around the premise that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.") (simplified). The majority contravenes this principle by instructing the district court on remand to consider contentions that Bastide-Hernandez has never made and, indeed, has explicitly disavowed.

As reflected in his answering brief, Bastide-Hernandez's position throughout this appeal has been that, if the immigration court *lacked* subject matter jurisdiction when his initial removal order was issued in 2006, then he "*did not need to satisfy § 1326(d)'s requirements* because the underlying removal order supporting the charge was issued ultra vires" (emphasis added). Similarly, when asked to file a supplemental brief in this court specifically addressing the impact of *Palomar-Santiago*, Bastide-Hernandez reiterated that the decision did not affect his jurisdictional objections, "which can never be waived or forfeited," and that the decision therefore "has no bearing or impact on this appeal whatsoever." Notably, in that brief, Bastide-Hernandez alluded to a *different* potential ground for challenging his 2006 removal order under § 1326(d)—*viz*., whether his appeal waiver at his 2006 hearing was knowingly and

intelligently made—but he noted that the "question of the validity of his appeal waiver was not raised in the district court" and therefore was not at issue in this appeal.

In short, Bastide-Hernandez has never contended in this court that, if the immigration court *had* subject matter jurisdiction, he nonetheless could satisfy the requirements for asserting a collateral challenge under § 1326(d) *based on non-jurisdictional defects in the underlying Notice to Appear* ("NTA"). Nonetheless, the majority inexplicably remands with instructions to consider whether those non-jurisdictional defects in the NTA could give rise to a challenge under § 1326(d) or whether Bastide-Hernandez "forfeited his claim-processing rights" concerning such defects. *See* Opin. at 16 n.10.

The majority's remand instructions are all the more puzzling given the explicit position that Bastide-Hernandez's counsel took when asked about § 1326(d) at oral argument. Counsel affirmatively stated that no § 1326(d) inquiry on remand was warranted if we were to reject his argument that the NTA's defects deprived the immigration court of subject matter jurisdiction. Specifically, when asked whether, if Bastide-Hernandez were to lose on the jurisdictional issue, "there's no remand for § 1326(d)," counsel responded as follows:

> Counsel: "That's correct. That is my position. If you say that I do not win on the jurisdiction issue, remand for § 1326(d) is not necessary. Again, because you have already held that I lose on my substantive argument."

Oral Argument at 56:39, *United States v. Bastide-Hernandez*, available at <https://www.ca9.uscourts.gov/media/video/?20220322/19-30006/>. Instead, as counsel

explained, a remand to consider the § 1326(d) factors was necessary only if he *prevailed* on his jurisdictional argument:

> Counsel: "[I]f we lose on the merits it doesn't matter whether we exhausted our remedies.[1] It doesn't matter if we satisfied § 1326(d) if we can't satisfy the substance of the argument."
>
> . . .
>
> Counsel: "I think if you say I lose on [the] substance, we go back to the district court. *If I win on [the] substance*, but *Palomar-Santiago* applies we still should go back to the district court to address § 1326(d)."

*Id*. at 55:38, 57:42 (emphasis added).

In nonetheless claiming that Bastide-Hernandez's counsel was unclear on this score, the majority relies on a quotation that it improperly takes out of context, thereby distorting the meaning of what counsel said. *See* Opin. at 16 n.10. Counsel's full statement was:

> Counsel: "*Palomar-Santiago* and [§] 1326(d) do not provide a barrier to relief *when you're challenging subject matter jurisdiction* and authority of an immigration court, but at worst, this panel must remand to the district court because Mr. Bastide-Hernandez was

---

[1] As the majority notes, *see* Opin. at 7 n.2, exhaustion of administrative remedies is one of the three factors enumerated in § 1326(d).

> not given an opportunity to present evidence
> regarding [§] 1326(d) because that was not at
> issue before the district court *because the
> district court excused him from proving that*."

Oral Argument at 30:07 (emphasis added). In context, it is clear that counsel was addressing the impact of *Palomar-Santiago* on the district court's holding that a jurisdictional challenge was excused from satisfying the requirements of § 1326(d). Counsel's argument was that if we *agree* with his contention that the defects in the NTA deprived the immigration court of jurisdiction, then either (1) *Palomar-Santiago* and § 1326(d) would "not provide a barrier to relief" because the district court *properly* excused compliance with § 1326(d); or (2) "at worst," *Palomar-Santiago* would require remand for application of § 1326(d). Counsel's point is exactly the same as what he later stated at argument, as quoted above: "*If I win on [the] substance, but Palomar-Santiago applies* we still should go back to the district court to address § 1326(d)." Oral Argument at 57:42 (emphasis added). At no point did Bastide-Hernandez or his counsel claim—either in his briefs or at oral argument—that remand for application of § 1326(d) would be warranted if he *lost* his jurisdictional argument.

Thus, Bastide-Hernandez himself has expressly disclaimed the need for any further § 1326(d) analysis *if* we rule against him on the jurisdictional issue. We have now ruled against him on that jurisdictional issue—correctly, in my view. Although Bastide-Hernandez has not asked us in that circumstance to require a reconsideration of the § 1326(d) factors on remand, and has instead affirmatively stated that such an analysis is unwarranted, the majority nonetheless instructs the district court to go ahead and reconsider the very issue that Bastide-Hernandez has

consciously and affirmatively waived.  That is improper. *See Sineneng-Smith*, 140 S. Ct. at 1579.**[2]**

Third, the particular issues that the majority conjures up for remand are both irrelevant and meritless.

Having correctly recast the NTA's defects as violations of claim-processing rules, the majority *sua sponte* instructs the district court to conduct a new § 1326(d) analysis that addresses two specific issues: (1) whether Bastide-Hernandez "forfeited his claim-processing rights"; and (2) whether any such forfeiture "is affected by whether he received a notice of hearing." *See* Opin. at 16 n.10.  But as applied to this case, the majority's two issues concerning forfeiture of claims-processing objections are simply irrelevant, because those non-jurisdictional objections (even if preserved) could not possibly contribute to making the three-prong showing that § 1326(d) requires, as construed in *Palomar-Santiago*.     Given that Bastide-Hernandez *did* appear at his immigration court hearing (despite the NTA's failure to include date and time information), there is no plausible sense in which those NTA's *date-and-time defects* could be said to have: (1) rendered an appeal to the BIA unavailable, *see* 8 U.S.C. § 1326(d)(1) (requiring exhaustion only of "available" administrative remedies); *cf. Palomar-Santiago*, 141 S. Ct. at 1621; (2) "deprived" him "of the opportunity of judicial review," *id*. § 1326(d)(2); and (3) prejudiced him, much less rendered his proceedings "fundamentally unfair," *id*. § 1326(d)(3); *see also United*

---

**[2]** In defending its remand, the majority ignores every point made in this dissent other than this review of counsel's comments at oral argument. *See* Opin. at 16 n.10.  But even if the majority were correct about counsel's comments, it does not address the multiple other reasons why we should not give specific instructions to reconsider the § 1326(d) issue on remand.

*States v. Barajas-Alvarado*, 655 F.3d 1077, 1085 (9th Cir. 2011) (explaining that § 1326(d)(3) can be satisfied by showing that "the deportation proceeding violated the alien's due process rights and the alien suffered prejudice as a result").

Moreover, the majority's two forfeiture issues both lack any plausible merit. Bastide-Hernandez plainly forfeited any objection to the NTA's non-jurisdictional defects by failing to show that he raised any such objection either during his 2006 immigration proceedings or in the multiple subsequent removal proceedings that were based on the 2006 removal order (including at least one in which he was represented by counsel). *See, e.g.*, *Manrique v. United States*, 137 S. Ct. 1266, 1272 (2017) ("Unlike jurisdictional rules, mandatory claim-processing rules may be forfeited if the party asserting the rule waits too long to raise the point."). And whether Bastide-Hernandez received a written notice of hearing announcing the date and time of his 2006 removal hearing has no bearing on whether he did or did not forfeit his non-jurisdictional objections to the NTA at that hearing.

I am at a loss to understand why the majority, after correctly resolving the main issue on appeal, sees fit to remand with instructions to consider irrelevant and meritless questions concerning an issue that Bastide-Hernandez not only has declined to raise, but has affirmatively forsworn. Accordingly, I respectfully dissent from footnote 10, but I otherwise concur in the majority opinion.